**Frederick B. PFISTER, Plaintiff,**

v.

**DELTA AIR LINES, INC. et al., Defendants.**

**Civ. A. No. C78–1567A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 17, 1980.

Eugene J. Carella, Los Angeles, Cal., for plaintiff.

Hugh E. Wright, Hansell, Post, Brandon & Dorsey, Eugene G. Partain, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

The conduct of plaintiff's counsel, Eugene J. Carella, in this case is the most outrageous and unprofessional conduct on the part of an attorney that this Court has ever encountered. The litigation tactics of Mr. Carella cannot be countenanced by a

judicial system which depends upon the good faith and integrity of attorneys who are admitted to practice and who accept solemn responsibilities as officers of the court. He has vexatiously multiplied the proceedings in this case and litigated in bad faith. To hold Mr. Carella personally responsible for the costs, including attorneys' fees, in the amount of $17,555.11, necessarily incurred by the defendants in responding to Mr. Carella's harassment, is but a mild sanction. Were Mr. Carella a member of this Court's Bar, further disciplinary proceedings would certainly be warranted.

*STATEMENT OF THE CASE*

A. Pre–Transfer Proceedings

Mr. Carella filed the complaint on behalf of the plaintiff on October 26, 1976, and Delta[1] moved for a change of venue on December 20, 1976. After securing two extensions of time, Mr. Carella filed a response to the motion for change of venue in late February, 1977. A hearing was held before Judge Joseph Waddy of the United States District Court of the District of Columbia on March 21, 1977. Ten days later, Judge Waddy issued an order granting the change of venue and transferring the case to the Northern District of Georgia.

Mr. Carella then filed an avalanche of motions and appeals, all of which delayed the transfer of the case for one year and five months. He first moved the District Court for an order certifying an appeal under 28 U.S.C. § 1292(b). That motion was denied within thirteen days. He then filed a notice of appeal from the order denying certification and soon thereafter moved for an extension of time to transmit the record to the Court of Appeals.

He also petitioned the Court of Appeals for Writ of Mandamus or Prohibition to nullify the March 31, 1977 order of Judge Waddy. That motion was denied on August 2, 1977, and two weeks later he moved for a stay of the transfer and of all proceedings and also requested a rehearing en banc on the motion for mandamus or prohibition.

On September 20, 1977, the Court of Appeals dismissed the appeal. At that time, Mr. Carella had not yet filed his opening brief.

On September 24, 1977, and again on October 27, 1977, Mr. Carella moved for a stay of the mandate pending the filing of his petition for certiorari. The Court of Appeals granted that motion to and including December 15, 1977. Two days before the deadline, he filed another motion for a stay of the mandate pending his petition for certiorari. Mr. Carella also filed several other motions with the Court of Appeals, which finally granted a stay to and including January 30, 1978, and ordered that no further stays would be granted.

On January 30, 1978, he finally filed a petition for certiorari, which was docketed as No. 77–1068 and named Judge Waddy as a Respondent.

The Supreme Court promptly denied certiorari, whereupon he requested a stay of the order denying certiorari, which was denied by Mr. Chief Justice Burger. Mr. Carella then reapplied to suspend the effect of the order denying certiorari, which was promptly denied by Mr. Justice Brennan. Finally, on May 17, 1978, he petitioned for rehearing on his petition for certiorari. Less than one month later, on June 12, the petition for rehearing was denied.

On September 13, 1978, the Clerk of the United States District Court for the District of Columbia transferred the case to the Clerk of the Northern District of Georgia.

B. Post–Transfer Proceedings (District Court Rulings)

Shortly after the case was finally transferred, Delta moved to strike and/or dismiss various counts of the complaint. In an order filed December 21, 1978, Judge Edenfield left Count I of the complaint virtually intact, but he dismissed Counts II, III and IV. He also directed Mr. Carella to file a supplemental brief within twenty days with

---

1. All defendants except Charles T. Bishop, Jr. and Brewer Adjustment Company are collectively referred to as "Delta".

respect to Counts V through VIII of the complaint.

Mr. Carella then filed a motion for reconsideration of that order, as well as a memorandum of points and authorities in response to the direction of the Court. While his motion for reconsideration was pending, on January 18, 1979, Mr. Carella filed a notice of appeal from the order filed on December 21, 1978. He then secured two extensions of time for transmission of the record in his first appeal to the Fifth Circuit, which was docketed as No. 79–1763.

On July 2, 1979, Judge Edenfield dismissed Counts V through VIII, and Mr. Carella noticed a second appeal on July 30, 1979, which appeal was docketed as No. 79–3207.

Three days later, on August 2, 1979, Mr. Carella filed a motion to disqualify Judge Edenfield. In that motion, he alleged that the District Judge is "consciously and intentionally abusing his office . . . under the ruse of legal exegesis", that his conduct is "grossly aberrant", "that his decision-making is motivated by extra–judicial directives and pressures more customarily referred to as political favors", that he is "beholden" to certain of the defendants' counsel, that he "issued a ruling of frivolous authority and amateurishly conceived", that he is "acting as a political pawn", that he has "knowingly and consciously, as well as willfully and wantoningly [sic], maliciously abused his office", that he is "deliberately protracting [this cause] in order to cause the plaintiff maximum harm and detriment", and so on.

## C. Post–Transfer Proceedings (Court of Appeals Rulings)

In the first appeal taken to the Fifth Circuit (No. 79–1763), Mr. Carella failed to file his opening brief within the time limitations, and the defendants moved to dismiss the appeal on April 20, 1979. That motion was granted on July 3, 1979, after Mr. Carella failed to file any response to the motion. He then filed an application to recall and stay the mandate and for an extension of time to file his petition for rehearing. Delta first learned of this motion when it received a copy of an order filed on August 9, 1979, which granted the motion. Mr. Carella then filed a petition for rehearing and suggestion for hearing en banc, but that was denied on October 1, 1979.

On October 6, 1979, Mr. Carella filed a motion for a stay in No. 79–1763 and to consolidate that appeal with the appeal in No. 79–3207.

Delta then moved to dismiss the appeal in No. 79–3207, and it also moved the Court to hold Mr. Carella personally responsible for the costs, including attorneys' fees, of that appeal. Delta asserted that the appeal had been taken in bad faith for the purpose of delay and harassment and that attorneys' fees could therefore be taxed as part of the costs. Furthermore, Delta argued that the Court could hold Mr. Carella personally responsible for all those costs, including attorneys' fees, under 28 U.S.C. § 1927. On the ground that the motion for stay and consolidation filed in No. 79–1763 was frivolous, dilatory and filed in bad faith, Delta also moved to hold counsel personally responsible for the costs generated by that motion.

Mr. Carella then responded with a flood of motions in both appeals. He moved to stay all the proceedings, to disqualify legal counsel, to impose sanctions upon opposing counsel, and for leave to file an amended complaint in the Fifth Circuit. Due to the delayed receipt of all of these motions, Delta was unable to respond until November 5. All of its responses were returned unfiled, but nevertheless the Court denied all of Pfister's motions on November 13. In the meantime, the Court had already denied the motion for stay of the mandate in No. 79–1763 and granted Delta's motion to dismiss the appeal in No. 79–3207. As part of that order, the Court remanded Delta's motion to hold Mr. Carella personally responsible for the costs, including attorneys' fees, of the appeal taken in No. 79–3207. That order was filed on November 5, 1979. On or about November 21, 1979, Mr. Carella filed a motion seeking the recusal of the Fifth Circuit panel and the vacation of the

orders of November 13 and November 5. He also filed a petition for rehearing with then–Chief Judge Brown on November 21, 1979. Delta did not receive a service copy of either of those motions.

On December 5, 1979, the Court of Appeals denied the motion for recusal and vacation of prior orders. It also denied the petition for rehearing, which Chief Judge Brown had referred to the panel which entered the prior orders. In addition, the Court ordered Mr. Carella, before seeking to practice further before the Court, to obtain admission to its bar as required by Local Rule 5. The clerk was directed to accept no further filings from Mr. Carella until such time as he obtained admission to the Bar of the Court.

In an order filed on February 27, 1980, Chief Judge James P. Coleman dismissed judicial misconduct complaints filed by Mr. Carella against Judges Gee, Henderson, Hatchett, and Brown of the Fifth Circuit.

D. Reassignment of Case

When several new district judges were appointed to the bench in the Northern District of Georgia, the judges of that Court transferred some of their cases to the newly–appointed judges in order to effect an equitable distribution of the workload. This case was one of those transferred by Judge Edenfield. Accordingly, in an order filed December 19, 1979, Judge Edenfield denied Pfister's motion for disqualification as moot. On January 18, 1980, Mr. Carella filed a notice of appeal from that order. Rather than paying the docket fee for the appeal, he filed a motion for *in forma pauperis* status with the Fifth Circuit Court of Appeals. However, this motion should have been submitted to the District Court in the first instance under Rule 24 of the Federal Rules of Appellate Procedure. Therefore, on February 28, 1980, the Clerk of the Fifth Circuit returned, unfiled, the motion for leave to proceed *in forma pauperis* and granted Mr. Carella thirty days within which time to file the motion with the District Court or pay the docketing fee. Later, Mr. Carella contacted the office of

the Clerk of the Fifth Circuit to advise that he had not received the February 28 letter, and he was granted an additional fifteen days to file any motion in the District Court.

The docketing fee was subsequently paid. Delta then moved to dismiss that appeal (No. 80–7267) and for sanctions. In an order filed June 19, 1980, the Fifth Circuit dismissed the appeal and granted Delta's motion to hold Mr. Carella personally responsible for the costs, including attorneys' fees, of the appeal. The case was remanded for the determination and assessment of damages.

Mr. Carella then moved for recall of the mandate pending petition for rehearing, but again he failed to serve Delta's counsel with a copy of his motion. Although the motion was granted, Mr. Carella did not timely file his petition for rehearing, and the mandate issued.

*ISSUES BEFORE THE COURT*

Now pending before the court is Delta's motion to hold Mr. Carella personally responsible for the costs, including attorneys' fees, of the appeals in Nos. 79–3207 and 80–7267. With respect to appeal No. 80–7267, the only question before the court is the amount of the damages to the defendants caused by Mr. Carella's bad faith litigation tactics.

With respect to the appeal in No. 79–3207, the order of the Fifth Circuit dismissing the appeal and remanding the motion for costs and attorneys' fees is less clear, however. It is the opinion of the Court that the order impliedly found that the appeal was frivolous and taken in bad faith. In the event that the Fifth Circuit intended for this court to review the record of that appeal and make a determination as to whether it had been taken in bad faith, the Court has reviewed the record, has held a hearing, and finds that the appeal was taken in bad faith.

The hearing was originally scheduled on these matters for June 11, 1980, but on the day before the hearing Mr. Carella notified the Court that he was ill and unable to

attend. Accordingly, the matter was continued.

By an order of July 10, 1980, this Court directed Delta to supplement its motion by submitting supporting documents for damages within 20 days and Mr. Carella to file his response within 10 days thereafter. On July 28, 1980, Delta filed a supplement to its brief, as well as affidavits from the three counsel of record in the case.

Mr. Carella filed no timely response, and his failure to do so would be grounds for concluding that there was no opposition on his part to the motion. See Local Rule 91.2.

Nevertheless, the Court rescheduled the hearing and notified Mr. Carella by attempted registered mail, regular mail, and by telephoning his personal answering service, of the date. Apparently Mr. Carella did receive notification, for on August 28, the day before the hearing, the Court received a telegram from Mr. Carella in which he indicated that he opposed the motion which had been scheduled for hearing. The telegram stated in part:

> Be further advised that I shall not attend the hearing on this matter since both the FBI (Mr. Webster personally) and the Senate Judiciary Committee are actively considering the serious charges that I have made to them under oath with respect to an interstate criminal conspiracy including threats on my life designed to obstruct the implementation of the ERISA statute and further designed to defeat my client's legal interests.
>
> Until such time as I receive a written response concerning the serious charges which I have registered with the above enforcement agencies I am unable to proceed with the subject litigation.
>
> I would be most happy to participate in any appropriate form as soon as the FBI and the Senate Judiciary Committee absolve Delta Airlines it's legal counsels and various federal officials of all criminal charges which I have made under oath and have also responded to the obstruction of justice allegation addressed to them by me.

This telegram could only be interpreted as a refusal to participate in the hearing on August 29, and the hearing proceeded without Mr. Carella. The Court heard oral argument on the issue of bad faith and received testimony from two expert witnesses concerning the reasonableness of the attorneys' fees and expenses submitted in the affidavits of Delta's counsel.

## BAD FAITH OF COUNSEL

Careful examination of the record in this case and, in particular, the appeal in No. 79–3207, can lead to only one conclusion: that the appeals in Nos. 79–3207 and 80–7267 were frivolous and taken in bad faith.

Mr. Carella has taken four appeals from non-appealable, non–final pretrial orders in this case, and all of those appeals have been dismissed. In none of those appeals did he ever file an opening brief. Although this case is now almost four years old, having been filed on October 26, 1976, Mr. Carella has undertaken no formal discovery. Under Local Rule 181.1, the time within which all discovery must have been completed has long since expired. The complete lack of any preparation for trial, when coupled with his recent telegram refusing to participate in any further proceedings in this Court, is evidence that Mr. Carella's litigation tactics are designed for harassment and the imposition of vexatious, unreasonable costs upon the defendants.

Mr. Carella's complete disregard of procedural rules is another indication of his bad faith. In his first two appeals to the Fifth Circuit (Nos. 79–1763 and 79–3207), he failed to file the bond for costs on appeal, as required by Fed.R.App.P. 7. He never attempted to gain admission to the Bar of the Fifth Circuit until that Court entered an order directing the clerk not to accept any further filings from him until such time as he had been admitted to the Bar. Also, Mr. Carella has failed on numerous occasions to serve opposing counsel with documents which he has filed in the District Court, the Fifth Circuit, and the Supreme Court. As a result, Delta was forced to incur unreasonable expenses in the form of long–distance telephone calls to keep abreast of the status of the case.

A prime example of Mr. Carella's failure to serve counsel on a timely basis is his belated service of the four motions he filed in No. 79–3207 after Delta filed its motion to dismiss. Because of the delayed service, even though the affidavits reveal that counsel and secretaries worked overtime to prepare responses to those motions, it was impossible for Delta to meet the deadline for filing those responses. Nevertheless, within a matter of days the Fifth Circuit denied all of Mr. Carella's motions and, on its own motion struck part of those motions "as containing impertinent, disrespectful and unnecessarily abusive references to the district judge and to opposing counsel and parties."

Apparently dissatisfied by the decision of the Fifth Circuit, Mr. Carella then sought to recuse the panel which had entered the orders in his appeals, just as he had previously tried to disqualify Judge Edenfield and every other district judge in the Northern District of Georgia. Delta was not served with the motion to recuse the Court of Appeals panel, nor was it ever served with copies of the complaints of judicial misconduct lodged by Mr. Carella with the Fifth Circuit and denied by Chief Judge Coleman on February 27, 1980.

As the telegram received by this Court on August 28, 1980, indicates, Mr. Carella now refuses to participate in these proceedings until the FBI and the United States Senate investigate his complaint. This amounts to a willful refusal to participate in the judicial process which he himself has invoked.

The court finds that Mr. Carella litigated his appeals in Nos. 79–3207 and 80–7267 in bad faith. Under the very recent decision of the Supreme Court in *Roadway Express, Inc. v. Piper*, —— U.S. ——, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), it is now clear that an attorney can be held personally responsible under 28 U.S.C. § 1927 for his opposition's attorneys' fees if it is found that counsel has litigated in bad faith. This exception to the traditional American rule on attorneys' fees is not limited to cases where the action is filed in faith, for bad faith may be found in the conduct of litiga-

tion, as in this case. "If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial process." —— U.S. at ——, 100 S.Ct. at 2464. Delta adopted precisely this position with its first motion to hold counsel personally responsible for the costs of the appeal in No. 79–3207, and after *Roadway Express, Inc. v. Piper* there can be no doubt that Delta's position was well taken.

## REASONABLENESS OF COSTS AND ATTORNEYS' FEES

The Court has evaluated the affidavits of counsel, has heard the testimony of two expert witnesses, and has evaluated the reasonableness of Delta's costs and attorneys' fees under the factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). In particular, the Court makes the following findings of fact:

1. When the legal proceedings in any case have been vexatiously multiplied, as they have been in this case, it becomes necessary for counsel to devote time and labor to respond to each action of opposing counsel. The affidavits of counsel reflect a comparatively low amount of time spent in legal research. This is undoubtedly due to the fact that the briefs filed by Delta in support of motions to dismiss the appeals in Nos. 79–1763, 79–3207, and 80–7267 largely repeat the same arguments in support of the motion to dismiss. The amount of research time which is reflected in the affidavits was devoted to research on the more esoteric issues involved in this case. The Court perceives no duplication of effort in the three affidavits and finds that the legal work was efficiently handled. The most junior attorney was responsible for the bulk of the workload, and the other two attorneys provided initial guidance to the junior attorney and then reviewed and approved his work product. For example, in connection with the appeal in No. 79–3207, the three attorneys devoted 135.8, 21.8, and 19.6 hours to that appeal through July 25, 1980. Both of the expert witnesses testified that they perceived no work connected with either appeal which could have been per-

formed by secretaries or paralegals, and the Court agrees with their opinions.

2. The Court also agrees with the opinions of the two expert witnesses concerning the novelty and difficulty of the questions presented. There was very little novel or difficult about the issues of appealability, but some of the questions in this case almost defied categorization. For example, both expert witnesses testified that they had never been involved in a case, outside of pretrial discovery, in which an attorney was held personally responsible for his opposition's attorneys' fees. Delta performed all its research on this issue long before the opinion of the Supreme Court in *Roadway Express, Inc. v. Piper.*

3. Counsel for Delta have exhibited skill in performing the necessary legal services for their clients.

4. It appears to the court that counsel for Delta have not been precluded from other employment due to their acceptance of this case, except to the extent that Mr. Carella's vexatiousness has limited the number of hours available to devote to other matters. The Court also finds that counsel for Delta have handled this litigation efficiently, so that its impact upon their workload has been minimized to the greatest extent possible.

5. Both of the expert witnesses testified at considerable length as to their familiarity with rates charged by attorneys in the Atlanta area for similar cases. In fact, one of the expert witnesses had recently been involved in a complex antitrust case before another judge of this District and was quite possibly the most knowledgeable Atlanta attorney on the question of customary attorneys' fees. That expert witness testified that the hourly rates charged by Delta's lead counsel and by the most junior of the three attorneys were, if anything, low. The hourly rate charged by Delta's attorneys were $103 to $110 for lead counsel, $67 to $80 for the second attorney, and $52 to $55 for the junior attorney. The Court finds that those hourly rates fall within the range of reasonableness for the Atlanta area.

6. Although the record does not indicate whether the fee is fixed or contingent, the Court assumes that it is fixed. However, this factor has little, if any, relevance to the ultimate question of reasonableness in this case.

7. The Court also finds that portions of the work performed by counsel in this case were performed under severe time limitations. For instance, due to delayed receipt of Mr. Carella's four motions filed in No. 79–3207, counsel for Delta were forced to work overtime in order to respond. There was testimony to the effect that appeals always generate time pressures, but the Court finds that those pressures are of minimal significance in this case.

8. The complaint in this case demanded $48,500,000.00. Pretrial orders entered in this case have now limited the demand to $500,000.00, so it must be said that Delta's attorneys have been moderately successful in their efforts to date. As both expert witnesses testified, it is unusual for a court to hold counsel personally responsible for his opposition's attorneys' fees, so it must be said that Delta's counsel have obtained outstanding results in this case.

9. Both expert witnesses also testified as to their familiarity with the experience, reputation and ability of the three attorneys representing Delta. There is no need to belabor this point, but the Court finds that the hourly rates charged by these three attorneys fairly reflect their experience, reputation, and ability.

10. The "undesirability" of this case is probably only an insignificant factor to be considered with respect to the reasonableness of attorneys' fees. When counsel first accepted this case, they could not have anticipated that they would be confronted with such litigation tactics as have been exhibited in this case, and this factor of "undesirability" is, for all practical purposes, of no importance.

11. The record does not reflect any facts concerning the nature and the length of the professional relationship between Delta and its counsel in this case, but the Court finds that this factor is unimportant.

12. Neither of the expert witnesses was familiar with any case in which counsel was

held responsible for his opposition's attorneys' fees, and this court is also unfamiliar with any such case. The Court is therefore unable to consider awards in similar cases in assessing the reasonableness of the costs and expenses involved in this case.

Although the Court has been guided by the factors listed in *Johnson v. Georgia Highway Express, supra,* this case may very well be one of first impression. This is a case in which Delta Air Lines has been damaged by being forced to incur expenses and attorneys' fees to combat a vexatious opponent. No useful purpose would be served by granting a premium to Delta in recognition of the expertise of its attorneys or to compensate for work performed under severe time limitations in responding to novel and difficult legal issues. It seems to the court that the important issue involved in this case is to compensate Delta Air Lines for the amount of its damages.

Therefore, the Court finds that all of the attorneys' fees and expenses claimed in the affidavits are reasonable. The amount of the attorneys' fees was $13,224.20, and the amount of the expenses was $4,330.91. It is therefore ordered that Eugene J. Carella pay the amount of $17,555.11 either to Delta Air Lines, Inc. or the law firm of Powell, Goldstein, Frazer & Murphy.

So ordered.