**PUBLIC INTEREST BOUNTY HUNTERS, etc., Plaintiff,**

**v.**

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, et al., Defendants.**

**Civ. A. No. C81–1184A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 30, 1982.

---

William B. Hollberg, Atlanta, Ga., for plaintiff.

Kathie G. McClure, Asst. U. S. Atty., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Now pending before this court is the defendants' motion seeking an award of attorneys' fees against Dr. Edwin Frederick Robert Gordon and Mr. William Hollberg, counsel for plaintiff Public Interest Bounty Hunters (hereinafter referred to as "Bounty Hunters").

While the circumstances giving rise to this lawsuit are quite complicated,[1] the facts relevant to the instant motion can be easily summarized. The nominal plaintiff, Bounty Hunters, is an instrumentality of the "Edwin Frederick Robert Gordon Foundation" (hereinafter referred to as "the Foundation"), of which Dr. Gordon is trustee. Bounty Hunters has brought this suit as a *qui tam* action under the False Claims Act, 31 U.S.C. §§ 231, 232. This Act grants a private citizen "informer" with standing to sue "on behalf of the United States" to enforce the Act's prohibition against false or fraudulent claims for monetary payments from the federal government. Bounty Hunters attempted to utilize this Act to obtain a writ of mandamus compelling the defendant federal bank regulators to investigate purported unsound banking practices allegedly occurring at non-defendant banking institutions.

The plaintiff's complaint was dismissed by this court for failure to state a claim on June 23, 1982. What remains for this court to decide is whether the fact that this case was brought at all, and/or the legal and logical untenability of plaintiff's arguments and contentions, justify an award of attorneys' fees against either the plaintiff, its attorney, or both. While the general principles relating to attorneys' fee awards are well-settled, resolution of this issue is complicated by defendants' assertion that Dr. Edwin F. Gordon, an individual not explicitly a party in this case, is in fact the person against whom attorneys' fees should be assessed.

Although the "American Rule" disfavors the allowance of attorneys' fees in the absence of explicit contractual or statutory authorization, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), notable common law exceptions to this rule have been carved out. In the context of the instant case, the most significant of these exceptions involves a court's inherent power to award fees against a losing party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 258–9, 95 S.Ct. at 1622; *Pfister v. Delta Air Lines, Inc.,* 496 F.Supp. 932 (N.D.Ga.1980); *Gordon v. Heimann,* Civil Action Nos. C80–1265A and C80–288A (N.D.Ga. Sept. 25, 1981) (Hall, J.) (made part of the record in this case by its attachment to plaintiff's Motion for Recusal, filed in this court on October 23, 1981). *See also, Roadway Ex-*

---

1. The complex procedural history of this case has been carefully outlined by this court in its June 23, 1982 order. In addition, this court's order of September 25, 1981, in *Gordon v.* *Heimann,* Civil Action Nos. C80–1265A and C80–288A, details the history of prior *Gordon* cases relevant to the instant case.

*press, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). In addition, 28 U.S.C. § 1927 as amended now permits courts to assess attorneys' fees personally and directly against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Rule 11, F.R. Civ.P., providing that an attorney's required signature on a pleading constitutes a certification that the pleading is supported by reasonable grounds and is not interposed for purposes of delay, further corroborates the proposition that attorneys' fees can be charged against an attorney whose involvement in particular litigation results in an abuse of judicial process. Applying the above principles to the instant case, this court finds it appropriate to assess attorneys' fees against Dr. Gordon and inappropriate to assess them against William Hollberg.

I. *Dr. Edwin Frederick Robert Gordon*

Prior to the institution of the present action, Dr. Gordon in his individual capacity had filed thirteen federal lawsuits against officials of the Federal Reserve Board, the Comptroller of the Currency, and the Securities Exchange Commission, all alleging transactions and occurrences arising out of the same basic set of operative facts raised in his complaint in this lawsuit. In dismissing this lawsuit, this court found it unnecessary to rule on the *res judicata* effect of these actions upon the instant case, and declines again today to resolve this issue, although it is undisputed that the behavior of which Bounty Hunters here complains has been the subject of a large number of prior judicial proceedings.

The case presently before this court differs from the prior thirteen federal actions in name only. Although the nominal plaintiff is Bounty Hunters, even Dr. Gordon acknowledges that the real party in interest here is Dr. Gordon as trustee of the Edwin Frederick Robert Gordon Foundation. The pleading denominated "Second Response of Edwin F. Gordon and William B. Hollberg to Defendants Amended Motion and Brief for Attorneys' Fees" contains references to

"just what Respondent Gordon has attempted in this action" (at page 4). As that pleading states, "admittedly, he [Gordon] has pursued a set of facts as trustee in this informer action which he has previously pursued as an individual" (at page 5).

Nonetheless, Dr. Gordon first maintains that attorneys' fees cannot be assessed against him because he is not a party to this lawsuit. In making this assertion, he relies on *United States v. B. F. Goodrich,* 41 F.Supp. 574 (S.D.N.Y.1941) for the proposition that because False Claims Act suits brought by informers are merely *qui tam* actions, the cause of action presented here belongs solely to the United States. In addition, Dr. Gordon argues that even if Bounty Hunters and not the United States is the plaintiff for purposes of this lawsuit, then Bounty Hunters alone, and not he as an individual, is liable for attorneys' fees.

■ Consideration of plaintiff's argument that the United States is the true plaintiff in this action begins with an examination of the procedural scheme established by 31 U.S.C. §§ 231 and 232. These sections provide authorization for the *qui tam* action that the plaintiff attempted to bring here. Section 232 explicitly permits enforcement of the substantive provisions of 31 U.S.C. § 231 by a private citizen. Such an "informer" plaintiff must notify the United States of his intent to pursue his *qui tam* action; the United States may then elect to intervene in the action. If such election occurs, then the United States becomes the plaintiff; the action is "carried on solely by the United States." 31 U.S.C. § 232(C). It is significant that in cases in which the United States does appear, it "shall not be bound by any action taken by the person who brought it [i.e., the "informer"], and may proceed in all respects as if it were instituting the suit." *Id.* If *no* appearance by the United States is made, however, then the informer may carry on his suit as long as he meets the "jurisdictional requirements" of the statute. In other words, while the lawsuit is technically brought "in the name of the United States" whether or not the United States chooses to

appear, it is only through an affirmative and timely act of intervention that the United States will actually have a role to play in the ensuing litigation. The False Claims Act itself thus provides clear evidence that a *qui tam* suit brought by a private informer in which the United States elects not to intervene is qualitatively different from one in which an appearance by the United States actually alters the identity of the prosecuting party.

Recognizing that the plaintiff's complaint failed to state a claim, the United States chose not to intervene as a party plaintiff. Thus, this case was maintained by the plaintiff Bounty Hunters "as well for himself as for the United States." 31 U.S.C. § 232(B). Although brought "in the name of the United States" as required by § 232(B), it was carried on "at the sole cost and charge of" the plaintiff.

 The central purpose of 31 U.S.C. § 232, and indeed of similar statutes authorizing *qui tam* actions, is to provide a private citizen who would otherwise have no judicially cognizable "interest" in rights protected by particular federal substantive provisions with an interest sufficient to give that individual the standing to sue to enforce these provisions. *See, United States ex. rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1942); *Associated Industries of New York State, Inc. v. Ickes,* 134 F.2d 694 (2nd Cir. 1943). The *qui tam* plaintiff thus becomes a "person aggrieved" by defendants' purported behavior who has suffered "injury" of the constitutional magnitude required to confer upon him a claim against the defendants. *Qui tam* plaintiffs therefore stand in the position of "private attorneys general" whom Congress has "deputized" to enforce federal laws.

 That the United States is itself not a party to a *qui tam* action in which it elects not to intervene is not altered by the two identifiable benefits which inure to the United States as a result of such lawsuits. Initially, the United States benefits from the deterrent effects that *qui tam* suits are intended to and in fact do have upon potential defendants. In addition, the United States profits financially from a successful *qui tam* prosecution in that it receives at least 75% of the damages recovered by the private plaintiff. 31 U.S.C. § 232(E)(2). Section 232 of the False Claims Act is thus analogous to 15 U.S.C. § 15, which authorizes private treble damage suits in antitrust cases, even when the United States has conducted or is concurrently conducting a criminal prosecution of the same defendants *in its own name.* The *qui tam* False Claims Act lawsuit is an adjunct to federal statutory and common law prosecution of defendants who make false or fraudulent claims for payment from the federal government in the same way as the private civil treble damage suit is an adjunct to federal criminal antitrust prosecution. A treble damage action "is like a *qui tam* action, except [in a treble damage suit] the plaintiff keeps all the penalty, instead of sharing it with the sovereign." *Lyons v. Westinghouse Electric Corporation,* 222 F.2d 184, 189 (2nd Cir. 1954). Bounty Hunters' argument that the United States is the true plaintiff in the instant case is thus contrary to the plain meaning of the language of the False Claims Act, as well as to the cases construing this Act and similar *qui tam* provisions.

Moreover, plaintiff's reliance on the *Goodrich* case is misplaced. The *Goodrich* court was addressing the problem of the effect created by the pendency of a prior *qui tam* action under the False Claims Act upon a later case, filed by a second *qui tam* informer, seeking identical relief and involving identical factual allegations. In staying the second lawsuit pending the outcome of the first action, the court held that "the first plaintiff has sole control of the action ... even the sovereign [i.e. the United States] has no right to interfere." *United States v. B. F. Goodrich,* 41 F.Supp. 574, 575. In other words, the very case cited by the plaintiff in fact supports defendants' contention and this court's conclusion that the cause of action brought against defendants in the instant case "belongs" not to the United States, but to the *qui tam* plaintiff.

In this context, the statement that "The only plaintiff in an action such as this must be the United States," *Goodrich* at 575, reflects the fact that for any one claim based on any one set of facts, only one *qui tam* action can be brought by a private informer "in the name of the United States." This court has already noted the problem inherent in equating an action technically in the name of the United States with an action in which the United States is the active and actual prosecuting party. The fact that the suit is brought in the name of the United States is a legal fiction designed to implement the "private attorney general" theory underlying the cause of action itself, but should not and cannot be permitted to affect this case so as to obscure the identity of the true parties in interest.

■ This court now turns to Dr. Gordon's second argument, that Bounty Hunters and not Dr. Gordon individually is the party against whom attorneys' fees should be assessed. Public Interest Bounty Hunters is an "instrumentality" of the Edwin Frederick Robert Gordon Foundation. This Foundation, formed on March 13, 1981, is purportedly a "private foundation" established pursuant to 26 U.S.C. § 509 and 26 U.S.C. §§ 4940 *et seq.*, and to Ga.Code Ann. § 108–1101 *et seq.* While there is considerable disagreement and confusion among the parties as to whether the foundation was a charitable organization within the scope of 26 U.S.C. § 501(c)(3) at the time this suit was filed, this court will assume without deciding that this entity is in fact a duly constituted charitable organization. While plaintiff seems to believe that such an assumption necessarily results in the conclusion that Bounty Hunters, the Foundation's "litigation arm," is the plaintiff in this action, this court is compelled to disagree. There is no question but that Dr. Gordon is the driving force behind this lawsuit, as he has been in his thirteen individual lawsuits involving identical issues and claims, and that therefore attorneys' fees can be assessed against him.

Dr. Gordon is the trustee of the Foundation, and, as he freely states, he has brought this action "as Trustee to fulfill the purposes of the Foundation in litigating in public interest matters." (*See* Gordon affidavit of June 29, 1982, at ¶ 3.) The conclusion that Dr. Gordon is individually responsible for this lawsuit, notwithstanding the creation of Bounty Hunters as the nominal plaintiff, is bolstered by the posture of the plaintiff's Motion for Recusal, filed in this court on October 23, 1981, and denied on December 9, 1981. The main contention in support of that motion was that this court was personally biased against Dr. Gordon himself. Such an assertion clearly contradicts the plaintiff's contention that Dr. Gordon had no personal involvement in this case.

■ Moreover, a "foundation" and its "trustee" are, to some extent, legal fictions whose protective shell can be pierced under appropriate circumstances in order to expose the individual persons responsible for the entity's actions. The entity can be disregarded when necessary to avoid inequitable results. *See,* 1 Fletcher, *Cyclopedia of the Law of Private Corporations* (1974 Revision), § 41. This case presents precisely such a situation. Common sense clearly reveals that Dr. Gordon created the Foundation and brought suit in the name of its instrumentality in order to avoid application of the doctrine of *res judicata,* the assessment of attorneys' fees, or both. This court is not persuaded that the public-spirited and noble aims stated in the Foundation's charter are in any way relevant to the question of whether Dr. Gordon, who may himself be motivated by his view of the public welfare, is himself immune from scrutiny as the real force behind this lawsuit. As the record indicates, Dr. Gordon is the sole trustee, the sole member of the board, and the sole financial contributor to the Foundation. It appears to this court that the Foundation has assets of only $100.00, and that all other funds it has received have been in the form of loans from Dr. Gordon. Accordingly, there is no reason for this court to refuse to pierce through the veil of the Edwin Frederick

Robert Gordon Foundation, and its unincorporated "litigation arm" Public Interest Bounty Hunters, to find Dr. Gordon the real plaintiff in this case.

Furthermore, attorney Hollberg has in effect conceded in open court that it is impermissible for a party to hide behind a legal entity such as a trust or a foundation in order to avoid payment of attorneys' fees. During a hearing in this case, Mr. Hollberg candidly admitted that for purposes of the instant motion, the crucial issue was whether the court agreed that the United States was the sole relevant plaintiff; and that if the court did not so agree, then it was irrelevant whether the nominal plaintiff was Bounty Hunters or Gordon. Reason and logic thus compel the conclusion that, regardless of the actual style of this case, Dr. Edwin Gordon is the true plaintiff.

■ Given this conclusion, then, assessment of attorneys' fees against Dr. Gordon is justified. This court finds that, even using the strictest standard of *mens rea*, Dr. Gordon filed the instant lawsuit in bad faith. Dr. Gordon knew from the previous thirteen lawsuits brought in his individual capacity that this court could not grant the mandamus relief which he sought. As the fourteenth lawsuit filed by Dr. Gordon based on identical facts and brought against substantially the same defendants, this case merely carries on the pattern of vexatious and unfounded litigation already established by Dr. Gordon. The fact that this suit is styled as a *qui tam* action was not a sufficient variation from the earlier suits to warrant the filing of this suit in the face of such clear contrary precedent. This court cannot countenance such behavior.

II. *Attorney William Hollberg*

■ This court has carefully considered the defendants' request that attorneys' fees be assessed against William Hollberg, counsel for plaintiff Bounty Hunters, and finds Hollberg not liable for attorneys' fees in this case. This issue presented a close question, however, due to several particularly disturbing factors.

It is beyond dispute that the plaintiff's legal theories flew directly in the face of only recently established and clearly enunciated precedent in this District and in this Circuit. *See, e.g., Gordon v. Hensel,* Civil Action No. C78–799A (N.D.Ga. May 30, 1978) (O'Kelley, J.); *Gordon v. Heimann,* 645 F.2d 70 (N.D.Ga.1980) (Hall, J.), *aff'd per curiam* 5th Cir., 645 F.2d 70 (1981); *Gordon v. Board of Governors,* 645 F.2d 70 (N.D.Ga.1980) (Hall, J.), *aff'd per curiam,* 645 F.2d 70 (5th Cir. 1981); *Gordon v. S. E. C.,* 645 F.2d 70 (N.D.Ga.1980) (Hall, J.), *aff'd per curiam,* 645 F.2d 70 (5th Cir. 1981). Although the right to challenge existing precedent is unquestioned, the complaints and briefs drawn by Mr. Hollberg give no indication that he seriously considered the force of this precedent when bringing this case. No new cases and no new arguments either distinguishing this action from the established precedent or justifying a departure from it were brought to this court's attention. Mr. Hollberg was not unfamiliar with the District Court and Circuit Court decisions denying mandamus relief in the prior *Gordon* cases. Mr. Hollberg's deliberate and considered decision to participate in this case remains an unsettling mystery to this court.

Not only did the complaint and briefs drafted by Mr. Hollberg totally ignore existing precedent, but their underlying legal theories simply made no sense. Although bringing a False Claims Act suit in the name of the United States, Mr. Hollberg named instrumentalities of the United States as defendants instead of naming the parties that had allegedly defrauded the United States government. Only after many months of litigation was an effort made to make sense of the complaint's own premise by adding as defendants the parties whose alleged fraud gave rise to False Claims Act jurisdiction.

Moreover, this court is disturbed by what seems to have been Mr. Hollberg's acquiescence in a litigation strategy which initially concealed Dr. Gordon's involvement in this case. In particular, this court notes that the complaint in this case was filed shortly before this court's July 13, 1981, hearing on

attorneys' fees in the last two cases brought by Dr. Gordon in his individual capacity. Only after this hearing did the plaintiff file the amended complaint which revealed the connection between Public Interest Bounty Hunters, the Edwin Frederick Robert Gordon Foundation, and Dr. Gordon himself. In addition, Mr. Hollberg testified at this hearing that he was hired and paid by Dr. Gordon, rather than by the Foundation or any other entity, to conduct this litigation.

 Finally, this court notes that attorneys have an affirmative obligation not to clog the courts with frivolous lawsuits. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1979). If failure to know the law, the sudden hope that existing precedent may suddenly be reversed, or labeling an untenable theory of recovery as novel were adequate defenses to charges that a lawsuit was frivolous or was filed in bad faith, the court's inherent power to assess attorneys' fees in appropriate circumstances would be totally emasculated. Mr. Hollberg, however, did not conduct the instant litigation in an abusive manner; the real problem with this case was that it was filed at all. Based upon the evidence presented at the July 6, 1982 hearing on the pending motion, this court reluctantly concludes that an award of fees against Mr. Hollberg is inappropriate.

## III. *Computation of Attorneys' Fees*

The court has evaluated the reasonableness of the defendants' costs and attorneys' fees in this case under the factors listed in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974), using the analytical framework outlined in *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 (5th Cir. 1980). *See also, Fitzpatrick v. Internal Revenue Service,* 665 F.2d 327 (11th Cir. 1982). In particular, the court makes the following findings of fact:

### 1. *Time and Labor Required*

The defendants' counsel submitted an affidavit showing the number of hours spent in defending the instant suit. The court has reviewed this affidavit, and finds that the time spent was reasonable. The court notes that the federal government was able to minimize the expense of defending this suit because the same attorney who had dealt with the earlier *Gordon* litigation was principally responsible for the defense in this case as well.

### 2. *The Customary Fee*

The government seeks only fees of $60/hour. Only last year, in prior *Gordon* litigation, this court conducted an independent review of hourly rates charged in the Atlanta area and found the $60 hourly fee charged by the same government attorney to be reasonable, and in accord with the rates customarily charged by attorneys of similar experience and expertise in Atlanta.

### 3. *The Amount Involved and the Results Obtained*

The complaint in this case sought millions of dollars from the defendants. Since the suit was dismissed it must be said that defendants' counsel has been successful in her efforts to date. Since it is unusual for a court to award defendants attorneys' fees, defendants' counsel have obtained outstanding results in that regard.

### 4. *The Experience, Reputation and Ability of the Attorneys*

The ability of the Assistant United States Attorney and of her supervisors at the U. S. Attorney's office was demonstrably high.

After taking into account the foregoing factors, this court has calculated the base amount of attorneys' fees to be $3,900.00 ($60/hour times 65 hours spent). Accordingly, this court will now consider the remaining *Johnson* factors to determine whether an increase or decrease in this preliminary calculation is warranted.

### 5. *The Novelty and Difficulty of the Questions*

This case presented a complex factual situation. While the plaintiff's theory was not easily understood at first, no especially difficult issues were raised on the motion to dismiss.

### 6. The Skill Required to Perform the Legal Service Properly

Counsel for all the defendants have exhibited skill in performing the necessary legal services for their clients.

### 7. The Preclusion of Other Employment

Because the United States Attorney is a salaried employee of the federal government, this factor is not applicable.

### 8. Whether the Fee is Fixed or Contingent

Because the United States Attorney is a salaried employee of the federal government, this factor is not applicable.

### 9. Time Limitations

This case presented no special time limitations or pressures outside of the normal deadlines imposed by litigation.

### 10. The "Undesirability" of the Case

The undesirability of these cases is only an insignificant factor to be considered with respect to the reasonableness of attorneys' fees, because the United States Attorney had no choice as to whether to defend this suit. Its undesirability is thus of no practical importance.

### 11. The Nature and Length of the Professional Relationship With the Client

Because the United States Attorney is a salaried employee of the federal government, this factor is not applicable.

### 12. Awards in Similar Cases

Although this case has many unique aspects, the award made here comports, in general, with awards in other cases.

Consideration of the remaining *Johnson* factors outlined above compels the conclusion that no increase or reduction in the base amount of attorneys' fees is justified. Accordingly, this court awards defendants a total of $3,900.00 as attorneys' fees.

In sum, the defendants' motion for attorneys' fees against Dr. Edwin Gordon is GRANTED; their motion for attorneys' fees against Mr. William Hollberg is DENIED. The defendants have failed to show the irreparable harm necessary to justify injunctive relief. Accordingly, their motion for an injunction is DENIED. Judgment is to be entered in favor of the United States government in the amount of $3,900.00.

So ORDERED this 30th day of September, 1982.