**BAKER INDUSTRIES, INC., Appellee,**
v.
**CERBERUS LIMITED.**

**Appeal of CRAVATH, SWAINE & MOORE.**

**No. 84–5197.**

United States Court of Appeals, Third Circuit.

Argued Dec. 11, 1984.

Decided June 14, 1985.

Rehearing and Rehearing En Banc Denied July 16, 1985.

Higginbotham, Circuit Judge, filed dissenting opinion.

---

Samuel A. Larner, Michael M. Rosenbaum (argued), Budd, Larner, Kent, Gross, Picillo & Rosenbaum, P.C., Newark, N.J., for appellee.

Charles Danzig, Edward A. Zunz, Jr., Riker, Danzig, Scherer & Hyland, Morristown, N.J., Bernard G. Segal, Edward W. Mullinix, James D. Crawford (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Before GARTH and HIGGINBOTHAM, Circuit Judges, and McGLYNN, District Judge *.

---

\* Honorable Joseph L. McGlynn, Jr., United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Cravath, Swaine, and Moore (Cravath) here appeals an order of the district court taxing a portion of Baker Industries' attorney's fees against them. Concluding that the record amply supports the district court's finding that Cravath's conduct in the course of representing Cerberus, Ltd. in this case constituted bad faith, we affirm the award of attorneys' fees under 28 U.S.C. § 1927.

### I.

The district court ordered Cravath, Swaine, and Moore to pay Baker Industries, Inc. the legal fees which Baker incurred by reason of certain aspects of Cravath's conduct in representing Cerberus Limited in a patent licensing suit. The specific conduct of which Baker complained was Cravath's filing of objections to the legal conclusions of a special master[1] who was appointed at the district court's suggestion, pursuant to a stipulation of the parties. The stipulation into which Baker and Cerberus entered was arrived at after an extended colloquy between both parties and the court. The terms of the parties' stipulation are spread on the transcript record of the hearing held October 14, 1982.

In sum, the Baker-Cerberus stipulation provided as follows: (1) that the issues pending before the district court relating to an injunction against Baker's sale of smoke detectors were to be referred to a referee; (2) that the issues pending in arbitration, relating to breach and termination of the underlying contract, were to be referred to the same referee; and (3) that litigation between the parties then pending in Boston and New York was to be stayed pending the referee's determination. In particular, and because of the nature of the contested issues this stipulation barred review by any court of the referee's conclusions of law as well as of fact. Despite this non-appeala-ble feature of the stipulation, Cravath filed with the district court numerous objections to the referee's decision. The district court found that Cravath's action in seeking such review was taken in bad faith, given its stipulation that it would not appeal from the referee's determination.

Cravath, in disputing the non-reviewability of the referee's findings and conclusions, relied on precedents which Cravath cited as holding that parties cannot effectively stipulate to shield from review the legal conclusions of a Rule 53 master. Baker Industries disputed Cravath's characterization of the reference to the referee as a Rule 53 proceeding, and the district court agreed with Baker Industries, reading the Rule 53 cases on which Cravath relied, to be inapposite.

### A.

The underlying action was brought by Baker Industries, the licensee, to enjoin Cerberus' attempt to terminate a long term patent license for the manufacture of smoke detectors. The merits of the termination were to be settled by arbitration, pursuant to a contractual arbitration clause. Baker's suit was originally brought in New Jersey state court, and then removed to federal court by Cerberus.

The injunctive relief sought by Baker was denied by the district court as being covered by the arbitration clause and thus precluded by that clause. The district court's order was affirmed by this court on appeal. *Baker Ind., Inc. v. Cerberus, Ltd.*, 692 F.2d 747 (3d Cir.1982) (table). Cerberus then counterclaimed to enjoin Baker from selling its smoke detectors, claiming that these issues were not subject to the arbitration clause. Meanwhile, related suits were pending in both New York and Massachusetts.

At the urging of the district court, the parties agreed to refer all the issues before the district court, as well as the portion of

---

**1.** The parties and the district court referred to the neutral individual appointed by the court pursuant to the stipulation by varying designations. At times, this individual was referred to as a "master," an "arbitrator," an "arbitrator-master" and a "referee." For ease in reference, and without intending any particular substantive meaning to the term, we will refer throughout this opinion to the individual appointed as a "referee."

the dispute pending before the arbitrators, to a hearing before a neutral party—a referee—to be selected by the court. The advantage to be gained by such a reference was the possibility of judicial control over all of the issues,[2] thus concluding all disputes between the parties in one proceeding. The referee was to have power to order discovery. As a condition to acceding to the appointment of a referee, the district court required an express agreement of the parties that the referee's decision would be final and not reviewable. Both parties thereupon stipulated "that the findings of fact will be final" and that "the conclusions of law will be final." According to the court:

> [Question by Mr. Rosenbaum, counsel for Baker Industries: T]he Master's decision is not reviewable by you[?]
>
> THE COURT: That is right. And if (sic) not reviewable by the United States Court of Appeals for the Third Circuit and not reviewabling (sic) by the Supreme Court of United States, and not reviewable by the World Court—

It is evident from a reading of the transcript that absent full and complete agreement by the parties to the terms of the stipulation the district court would not have appointed a referee and would not have endorsed the reference procedure agreed to by the parties.

The precise nature of the court's reference is both disputed and the subject of some confusion. Nevertheless, despite the confusion in terminology by both the parties and the court, it is evident that what emerged was a hybrid form of reference— not a classic Rule 53 master, nor a conventional arbitrator. Rather, the court appointed an impartial referee granting him the powers agreed to by the parties.

To illustrate the confusion that led up to the appointment, we note that the district court repeatedly referred to the referee as a "Master" during the conference, which led to the parties' stipulation. It was in this connection that the district court discussed the Fed.R.Civ.P. 53 provisions relating to Masters.[3]

From the outset, the parties realized, however, that a true Rule 53 reference was inappropriate, as the district court lacked subject matter jurisdiction over the portion of the dispute covered by the arbitration clause. Indeed, at a hearing on the appointment of the referee, the district court, although referring to the appointee as an arbitrator-master, denied that the reference was to arbitration. "He's not an Arbitrator. The proceeding you are about to go through is not an arbitration." At the same hearing, the court referred to the referee as the "Arbitrator-Master" and to the reference as an "Arbitration-Mastership."

The hybrid character of the reference was recognized by the parties as well. When Baker moved to enforce the referee's favorable report, it moved alternatively to enter judgment on a Master's report and to confirm an arbitration award. The court reacted: "I don't know what you are talking about. There was no arbitration. There was no award." Despite this disclaimer, at the October 14, 1982 stipulation conference, the district court did at one time refer to the reference in terms of arbitration: "The arbitration will, in effect, be shifted to a different forum, one which we can control in terms of the timetable and speed, et cetera and so forth."

### B.

After receiving the referee's report, which was unfavorable to Cerberus, despite its earlier stipulation that findings of fact and conclusions of law were to be final and were not to be appealed. Cravath nevertheless filed thirty pages of objections to the report. Cerberus claimed that the objections which it filed with the district court and which appear to be objections raised to findings of fact were not barred by provisions of the stipulation prohibiting appeal because, according to Cer-

---

**2.** As noted in text *infra,* the district court would not have had jurisdiction over the issues in arbitration.

**3.** The full text of Fed.R.Civ.P. 53 will be found in Appendix A to this opinion.

berus, they were based on the referee having exceeded the scope of his reference. Cerberus also contended that "manifest errors of law" are always reviewable. On April 15, 1983, the district court judge held a hearing, at which he indicated that he would not consider objections other than those based on a claim that the scope of the reference had been exceeded.

Cravath then filed a 101 page brief in support of its various objections, insisting that the district court was obliged to exercise review of the referee's findings and conclusions despite its stipulation to forego appeal. Baker filed a 36 page response to Cerberus' objections, and a 43 page response to Cerberus' legal memorandum.

On April 11, 1983, Baker moved to enforce the referee's report and on April 25, 1983, Baker moved for an award of counsel fees pursuant to 28 U.S.C. § 1927. The district court granted both motions. In the district court's opinion, which denied Cerberus any review of the legal issues decided by the referee, the district court implicitly held that the referee was not a Special Master under Rule 53. Rather, according to the district court's opinion, "This court at no time could have delegated to the master the power to decide the controversy between the parties since this court has never had any such power to delegate," *Baker Industries, Inc. v. Cerberus, Limited,* 570 F.Supp. 1237, 1250 (D.N.J.1983), and "the only statute which arguably governs judicial review of Mr. Moser's [the referee's] decision is the United States Arbitration Act." Id. at 1251.

The district court judge thus found to be frivolous, Cravath's contentions on Cerberus' behalf that the referee's legal conclusions were reviewable, and found that Cravath's conduct in asserting this position was sufficiently vexatious to justify the award of attorneys' fees directly against it under 28 U.S.C. § 1927.[4]

## II.

■ At the outset, we must determine whether 28 U.S.C. § 1927 requires a finding of bad faith before attorneys' fees may be assessed directly against counsel. The statute itself does not speak explicitly in terms of bad faith. Nevertheless, we conclude that a bad faith finding is required as a precondition to the imposition of attorneys' fees under section 1927.

Section 1927 provides for the assessment of sanctions directly against counsel:

> § 1927. **Counsel's liability for excessive costs**
>
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Courts in other circuits have been uniform in holding that an attorney's bad faith is a necessary predicate to liability under section 1927. *E.g., United States v. Blodgett,* 709 F.2d 608 (9th Cir.1983); *United States v. Ross,* 535 F.2d 346 (6th Cir.1976). This bad faith requirement is seen necessary to avoid chilling an attorney's legitimate ethical obligation to represent his client zealously:

> The power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client. To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.

*Colucci v. New York Times Company,* 533 F.Supp. 1011, 1014 (S.D.N.Y.1982) (Weinfeld, J.).

---

**4.** The district court's order of February 17, 1984 assessed attorneys' fees in the amount of $32,-772.96 against Cravath, Swaine and Moore.

We too read section 1927 to require a showing of actual bad faith before attorneys' fees may be imposed. If it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under section 1927. We do not read the language of section 1927, which explicitly requires "unreasonabl[e]" conduct before attorneys' fees may be taxed, to impose such a burden absent actions taken which are tantamount to willful bad faith. But we conclude that before attorneys' fees and costs may be taxed under section 1927, there must be a finding of willful bad faith on the part of the offending attorney.

### III.

■■■ Having established that attorneys' fees may be imposed only upon a finding of willful bad faith, we now turn to whether such a finding must be explicitly made by the district court, and if not, whether the record here will support such an implicit finding. While the court here did not make an explicit bad faith finding in so many words, in light of the entire record and the expressions of the district court judge, who employed the very words of the statute, we are satisfied that the "bad faith" standard that we hold is required under section 1927, is met.

The district court here acknowledged Baker's contention that "Cerberus' objections in the face of the agreement made in open court ... were filed by Cravath in bad faith," then went on to

find that the objections filed by Cravath on behalf of Cerberus—have unreasonably and vexatiously multiplied the proceedings ....

Most of the contentions advanced by Cravath on Cerberus's behalf do not relate to matters which are allegedly outside the scope of the reference. Instead, as our discussion has shown, they involve either challenges to the merits of the master's determinations, which cannot be made given the stipulation, or frivolous contentions that Cerberus did not receive

a fair hearing. Cravath contends that it has an ethical duty both to this Court and to its client to urge this Court to review the master's findings. There is no ethical duty, however, to violate a stipulation entered into in open court, and the authority which Cravath contends compelled it to do so is apposite only if its attempt to completely distort the nature of the stipulation reached is accepted.

*Baker Industries, Inc. v. Cerberus, Limited,* 570 F.Supp. at 1259.

Though the district court did not thus make an express finding of "bad faith" in so many words, it did find that the objections filed by Cravath "unreasonably and vexatiously multiplied the proceedings," tracking the language of the statute. The district court also implicitly held that the critical element of willfulness was present. The district court found that Cravath's challenges were directed not to the scope but rather to the merits of the referee's determination, in blatant violation of its stipulation. It also found that Cravath's position was an "attempt to completely distort the nature of the stipulation reached."

Under these circumstances, little would be gained by remanding this proceeding to the district court for an explicit finding of bad faith when it is clearly evident from the district court's expressions and from the record as a whole, that the district court found, albeit implicitly, Cravath's conduct to be in bad faith. While it is far preferable for the district court to make express findings, rather than remit us to a review of the record, we are convinced from our independent review of the record that the district court's expressions are sufficient to constitute findings satisfying the willfulness and bad faith requirements for an assessment of costs and fees under section 1927.

### IV.

■■■ The district court's findings are nonetheless subject to our review and must find support in the record. The district court's finding of willfulness on Cravath's

part, as a finding of fact, is subject to reversal only if clearly erroneous. *See* Fed.R.Civ.P. 52(a). This standard requires us to pay deference to the district court's interpretation of the factual record before it. *Anderson v. City of Bessemer City, North Carolina,* — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Once such a finding is made, the appropriateness of assessing attorneys' fees against counsel under section 1927 is a matter for the district court's discretion. *See Mobil Oil Corporation v. Independent Oil Workers Union,* 679 F.2d 299 (3d Cir.1982).

Cravath's position on appeal is quite simple. According to Cravath, (1) the district court appointed the referee pursuant to Fed.R.Civ.P. 53; (2) Cravath's objections to the referee's report were based on the referee's erroneous legal rulings; and (3) a line of cases in other circuits renders invalid any stipulation to shield a Rule 53 master's report from review for erroneous conclusions of law. Cravath contends that its reliance on those cases was reasonable, thus barring a finding of willfulness and bad faith as a matter of law.

We are not persuaded by Cravath's argument: the reference was not made pursuant to Rule 53; Cravath's objections were not solely aimed at the referee's legal conclusions (even if such conclusions could be reviewed under the stipulation); and the cases cited by Cravath do not establish the principle of absolute reviewability upon which Cravath relies.

### A.

■ As we have earlier observed, the precise nature of the reference in this case is the subject of some confusion. The district court finally characterized it as an "arbitration-mastership." While Rule 53 was discussed during the conference that culminated in the stipulation of reference, it is clear that no Rule 53 reference could

have been made, since, due to the arbitration clause, the district court lacked subject matter jurisdiction over the entire controversy to be referred.

■ All parties to the stipulation were aware of this fatal defect in any attempted Rule 53 reference, yet they forged ahead to create their own hybrid reference procedure—a reference not precisely provided for in the Rules. Having knowingly and voluntarily gone outside the Rules to create the reference, Cravath may not in good faith seek to rely on a rule (Rule 53(e)(4)) [5] to challenge the results of the reference to which it had consented. Cravath agreed to an unorthodox protocol under which legal conclusions of the referee were *not* to be challenged. It cannot thereafter change the protocol to which it had agreed.

### B.

■ Cravath characterizes its lengthy objections as: (1) challenging findings outside the scope of the referee's authority; and (2) challenging erroneous conclusions of law which it claims cannot be insulated from review under Rule 53. Neither of these characterizations can be supported.

By their own terms, Cravath's objections to the referee's report were directed to "separate clearly erroneous and unsupportable assertions of fact" in the Report. Objections of Cerberus, Ltd. to the Report of Special Master Richard G. Moser (Objections) at p. 4. The district court found, and we agree, that many, if not the vast majority, of the objections were not relevant to the scope of the reference or the scope of the referee's authority. The objections, for the most part, challenged findings as being contrary to evidence or discussed findings relevant to the merits. *E.g.* Objections at p. 11 (Finding 7 challenged as contrary to Baker's answers to interrogatories); Objections at 21 (statement in chronology that Baker attempted to terminate contract de-

---

**5.** Rule 53(e)(4) provides:

*Stipulation as to Findings.* The effect of a master's report is the same whether or not the parties have consented to the reference; but, when the parties stipulate that a master's find-

ings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.

Fed.R.Civ.P. 53(e)(4).

spite "fact [that] there is no evidence ... that Cerberus sought to terminate the agreement."). Some objections dealt with the improper admission of evidence and challenged findings which were predicated upon that evidence. *E.g.* Objections at 30 (admission of testimony that no smoke detectors had failed safety tests, leading to inference that they passed).

We cannot accept Cravath's characterization of its objections as permissible objections which would not offend Cravath's stipulation that it would not appeal the referee's decision. Moreover, even were we to accept Cravath's contention that conclusions of law may not be insulated from review in this hybrid situation (an argument which we do not accept) we nevertheless are not persuaded by Cravath's characterization of its "Objections" as being directed at conclusions of law.

### C.

Cravath entered into the stipulation of reference on behalf of Cerberus in order to cut short costly and time consuming trials and hearings which would otherwise proceed in federal court and in arbitration. Litigation between Cerberus and Baker in federal courts in Massachusetts and New York was stayed pending the resolution of the instant dispute by the court-appointed referee. Thus, the reference devised was designed to provide a speedy *and final* disposition of a significant portion, if not all, of the disputes then pending between the parties. Cravath willingly agreed to the reference and, in doing so, undoubtedly advised Cerberus of the advantages and disadvantages which might result.

We do not believe that Cravath would have waived its client's right of review without having received its client's authority to do so. Nor would it have waived its client's right to appeal without full appreciation of the consequences of such a waiver. Having given its consent to the protocol which resulted in the referee's appointment and, with obvious recognition of the fact that the court would not have proceeded with this type of irregular procedure without having received a complete and full consent from the parties to appoint this type of referee, Cravath could not thereafter renege on its agreement. Nevertheless, after learning that it had not prevailed in the very forum that Cravath had agreed to accept, Cravath sought, on behalf of its client, to avoid its agreement and seek review of that which it had stipulated was to be unreviewable.

■ We agree with the district court that Cravath's post-decision conduct was a flagrant breach of its stipulation. Indeed, such conduct transcends the bounds of zealous advocacy on behalf of a client. In the context of this case, Cravath's conduct can only be characterized as the district court characterized it: as conduct that "unreasonably and vexatiously multiplied the proceedings." That conduct, in the district court's view and in our view constituted willful bad faith which justified imposition of attorneys' fees under section 1927. The record in this case amply supports such a sanction.

Having determined that the district court was justified in resorting to section 1927 because of the actions taken by Cravath in connection with its stipulation, we need not decide the issue of whether in a true Rule 53 reference the parties may effectively agree to shield a Master's conclusions of law from review.[6]

6. We note, however, that the cases relied upon by Cravath in support of its objections are not dispositive of this issue. First, Rule 53(e)(4), which provides that "When the parties stipulate that a master's finding of fact shall be final, only questions of law arising upon the report shall thereafter be considered," does not address the issue of whether legal conclusions may be shielded from review in the same manner as factual findings.

Moreover, both cases cited by Cravath are distinguishable and are not dispositive of the issue pressed upon us. In *Polin v. Dun & Bradstreet*, 634 F.2d 1319 (10th Cir.1980), the Tenth Circuit held unenforceable a stipulation shielding the master's legal conclusions from review, and remanded to the district court to review the master's legal determinations. In *Polin*, however, unlike this case, the parties did not stipulate to a reference in the first place. The en-

We cannot leave this discussion without one last observation. An attorney's obligation to the court is one that is unique and must be discharged with candor and with great care. The court and all parties before the court rely upon representations made by counsel. We believe without qualification that an attorney's word is his bond. Thus when a competent and knowledgeable attorney represents to a court that he consents to a particular procedure, remedy, or suggestion, the judge to whom that representation is made must be able to, and does, rely completely on that agreement. In this case, the district court judge was clearly justified in assuming that once he had acted to appoint a referee with the parties' concurrence, that all provisions and conditions that were part of and reflected in that concurrence would be fully discharged. We will not expect less from those who practice in our courts.

### V.

Accordingly, we conclude that the district court properly imposed attorneys' fees and costs against Cravath under U.S.C. § 1927. We will affirm the order of the district court dated February 17, 1984.

### APPENDIX A

**Rule 53. Masters**

**(a) Appointment and Compensation.** The court in which any action is pending may appoint a special master therein. As used in these rules the word "master" includes a referee, an auditor, an examiner, and an assessor. The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct; provided that this provision for compensation shall not apply when a United States magistrate is designated to serve as a master pursuant to Title 28 U.S.C. § 636(b)(2). The master shall not retain his report as security for his compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

**(b) Reference.** A reference to master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Upon the consent of the parties, a magistrate may be designated to serve as a special master without regard to the provisions of this subdivision.

**(c) Power.** The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may

---

forceability of a stipulation to shield legal conclusions from review where the reference was not by consent has no application to the enforceability of a stipulation where the parties have not only consented to a reference but have actively participated in framing the reference

and in so doing have waived review. In *Duryea v. Third Northwestern National Bank*, 602 F.2d 809 (8th Cir.1979), the court held no more than that a court of appeals had no jurisdiction over a direct appeal from a magistrate's report.

APPENDIX A—Continued

himself examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in the Federal Rules of Evidence for a court sitting without a jury.

**(d) Proceedings.**

(1) *Meetings.* When a reference is made, the clerk shall forthwith furnish the master with a copy of the order of reference. Upon receipt thereof unless the order of reference or otherwise provides, the master shall forthwith set a time and place for the first meeting of the parties or their attorneys to be held within 20 days after the date of the order of reference and shall notify the parties or their attorneys. It is the duty of the master to proceed with all reasonable diligence. Either party, on notice to the parties and master, may apply to the court for an order requiring the master to speed the proceedings and to make his report. If a party fails to appear at the time and place appointed, the master may proceed ex parte or, in his discretion, adjourn the proceedings to a future day, giving notice to the absent party of the adjournment.

(2) *Witnesses.* The parties may procure the attendance of witnesses before the master by the issuance and service of subpoenas as provided in Rule 45. If without adequate excuse a witness fails to appear or give evidence, he may be punished as for a contempt and be subjected to the consequences, penalties, and remedies provided in Rules 37 and 45.

(3) *Statement of Accounts.* When matters of accounting are in issue before the master, he may prescribe the form in which the accounts shall be submitted and in any proper case may require or receive in evidence a statement by a certified public accountant who is called as a witness. Upon objection of a party to any of the items thus submitted or upon a showing that the form of statement is insufficient, the master may require a different form of statement to be furnished, or the accounts or specific items thereof to be proved by oral examination of the accounting parties or upon written interrogatories or in such other manner as he directs.

**(e) Report.**

(1) *Contents and Filing.* The master shall prepare a report upon the matters submitted to him by the order of reference and, if required to make findings of fact and conclusions of law, he shall set them forth in the report. He shall file the report with the clerk of the court and in an action to be tried without a jury, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.

(2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

(3) *In Jury Action.* In an action to be tried by a jury the master shall not be directed to report the evidence. His findings upon the issues submitted to him are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the court upon any objections in point of law which may be made to the report.

(4) *Stipulation as to Findings.* The effect of a master's report is the same whether or not the parties have consented to the reference; but, when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.

(5) *Draft Report.* Before filing his report a master may submit a draft thereof

APPENDIX A—Continued

to counsel for all parties for the purpose of receiving their suggestions.

**(f) [Application to Magistrate.]** A magistrate is subject to this rule only when the order referring a matter to the magistrate expressly provides that the reference is made under this Rule.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting:

I part company with the majority because I am of the opinion that, under any view of the proceedings below, the record does not sustain an inference of the type of unreasonable and vexatious conduct which calls 28 U.S.C. § 1927 (1982) into play.

While the trial judge was understandably exasperated by the procedural complications presented by Cravath, Swaine and Moore's ("Cravath") multitudinous objections to Baker's motion for entry of judgment on the Master's report, and obviously perturbed by what was perceived as an attempt by Cravath to renege on an agreement, that reaction to a conceded failure to honor a stipulation does not, under the circumstances in this case, justify the severe penalty imposed under section 1927. Inasmuch as I believe that the district court's assessment of costs constituted an abuse of discretion mandating our reversal, I respectfully dissent.

## I.

The federal cost statute, section 1927 of the Judicial Code, 28 U.S.C. § 1927,[1] equips federal judges with a potential sanction for attorney misconduct, but the power to assess costs on an attorney in a given case is a power which " 'courts should exercise *only* in instances of a *serious and studied disregard for the orderly process of justice.' " *Overnite Transportation Co., v.*

*Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983) (quoting *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969)) (emphasis supplied by *Overnite* court).

Three substantial requirements must be met before costs may appropriately be imposed: 1) a multiplication of proceedings by an attorney; 2) by conduct that can be characterized as unreasonable and vexatious; and 3) a resulting increase in the cost of proceedings. R. Rodes, Jr., K. Ripple & C. Mooney, *Sanctions Imposable for Violations of the Federal Rules of Civil Procedure* 75 (1981) (footnotes omitted). *See generally* Comment, *Sanctions Imposed by Courts on Attorneys Who Abuse the Judicial Process,* 44 U.Chi.L.Rev. 619, 623–29 (1977).

As to the first and third requirements, the trial judge found that by objecting to Baker's motion for entry of judgment on the Master's report, "Cravath has considerably extended a procedure which had the primary purpose of providing the parties with a faster and less expensive way of resolving the significant disputes between them." *Baker Industries v. Cerberus,* 570 F.Supp. 1237, 1259 (D.N.J.1983). I am basically satisfied that this could suffice both as an implicit finding of multiplication of proceedings and as an indication of the trial judge's evaluation that the costs of the proceeding were higher than those which he thought should properly have been incurred.

But the linchpin of section 1927 liability is improper conduct. "In the language of the statute, it is a power which is exercisable only where the effect of the attorney's conduct is such as 'unreasonably and vexatiously' increases the costs." *Kiefel,* 404 F.2d at 1167.[2] Therefore, for purposes of

---

1. This statute, first enacted in 1948 and as amended September 12, 1980, Pub.L. 96–349, § 3, 94 Stat. 1156, states:

   Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

   28 U.S.C. § 1927.

2. As the courts have construed the multiplication of proceedings requirement, it appears to impose an objective test requiring a court to assess the impact of an attorney's *improper con-*

my analysis, my bottom line is that, even assuming *arguendo* a multiplication of proceedings directly attributable to Cravath's conduct, section 1927 liability is not present because the conduct in issue was not unreasonable and vexatious. Satisfaction of the multiplication of proceedings requirement is not sufficient to establish liability under section 1927.

"Whether Cravath increased the costs 'unreasonably and vexatiously' within the meaning of section 1927 depends upon whether the language 'unreasonably and vexatiously' is applied literally or whether it implies a bad faith or intentional misconduct requirement not explicit in the statutory language." *Barnd v. City of Tacoma,* 664 F.2d 1339, 1343 (9th Cir.1982).

As to this requirement of unreasonable and vexatious conduct, I am persuaded by those decisions which require intent, recklessness or bad faith; thus my colleagues and I agree that in order to assess fees against an attorney, there must be a finding of bad faith.[3] We also agree that an

*duct* on the court's processes: prolongation of the proceedings results from an attorney's "unreasonable and vexatious" behavior. In *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163 (7th Cir.1968) *cert. denied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969), for example, the defendant's attorney had, among other actions, deliberately changed an answer in a deposition that he was reading to the jury from "incorrect" to "correct," examined a witness on an exhibit that had not been offered in evidence, and made repeated meritless objections. *Kiefel,* 404 F.2d at 1165, 1169. The trial court levied costs in light of the attorney's "history of misconduct [that] is well documented in the prior opinions of this court." *Id.* at 1167.

**3.** The courts have been inconsistent in applying the statute's unreasonable and vexatious requirement, but the majority adopts the latter approach of implying a bad faith or intentional misconduct requirement.

Of the courts which have considered section 1927, the First Circuit and the Fifth Circuit apply the statute literally and require only a finding that counsel engaged in "unreasonable and vexatious" multiplication of the litigation. *See Limerick v. Greenwald,* 749 F.2d 97, 101–02 (1st Cir.1984); *United States v. Nesglo, Inc.,* 744 F.2d 887, 892 (1st Cir.1984); *Hagerty v. Succession of Clement,* 749 F.2d 217, 222–23 (5th Cir. 1984); *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287, 1292 (5th Cir.1983), *affirmed in part, vacated and remanded in part, Lewis v. Brown & Root, Inc.,* 722 F.2d 209, 210 (5th Cir.) (per curiam), *cert. denied,* — U.S. —, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). This also appears to be the approach currently used in the Sixth Circuit decision. *See Reynolds v. Humko Products,* 756 F.2d 469, 473–74 (6th Cir.1985). *But see United States v. Ross,* 535 F.2d 346, 349 (6th Cir.1976). ("Personal responsibility should ... flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court."). All the other circuits have required that the district court find some additional *overt incident* of vexatiousness before they will impose sanctions, although there are gradations as to the level of culpability required. These range from an interpretation of the language "unreasonable and vexatious" as imposing a restrictive standard to be exercised primarily in instances of intentional breaches of the Canons of Ethics, to a more liberal interpretation which equates "unreasonably and vexatiously" with "bad faith."

The District of Columbia Circuit requires, after a consideration of the proceedings as a whole, a finding that the attorney acted in bad faith. *Asai v. Castillo,* 593 F.2d 1222, 1225 (D.C.Cir. 1979). Similarly, the Second Circuit has held that there must be a finding that proceedings were not instituted in good faith and that significant delay resulted. *Tedeschi v. Barney,* 757 F.2d 465, 466 (2d Cir.1985); *see also United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 494–95 (2d Cir.1983) (baseless and inconstant character of the arguments); *Acevedo v. INS,* 538 F.2d 918, 920 (2d Cir.1976) (per curiam) (complete unsubstantiality of petition indicates lack of good faith). As to the Fourth Circuit's approach, *see Blair v. Shenandoah Women's Center, Inc.,* 757 F.2d 1435 (4th Cir.1985) (numerous instances of misconduct that tally up to subjective bad faith)

The Seventh Circuit, which has employed the sanction more frequently than the other circuits, has held that, although a finding of subjective bad faith is not required, the district court must still find some degree of culpability on the part of the offending attorney and that the imposition of fees is only proper where there is a finding of intent. *Knorr Brake Corp. v. Harbil Inc.,* 738 F.2d 223, 227 (1984). The *Knorr* court did not require an express finding of intent by the district court, but held that intent may be inferred from a total lack of legal or factual basis for a suit or from extrinsic or circumstantial evidence on the record. *Id.* at 227–28. *See also Oglesby v. RCA Corporation,* 752 F.2d 272, 279 (7th Cir.1985); *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1006 (7th Cir.1984); *Overnite Transportation Company v. Chicago Industrial Tire Company,* 697 F.2d 789, 794–95 (7th Cir.1983).

The Eighth Circuit also requires a finding of bad faith. *Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 462 (8th Cir.1983).

express finding of bad faith is not always required; it may be inferred from the record. Here, the trial court did not find explicitly that Cravath's conduct was unreasonable and vexatious. In no instance did the trial court make a finding that Cravath acted with intent to multiply the proceedings, with reckless disregard for the processes of the court, or with bad faith. *Baker Industries*, 570 F.Supp. at 1259.

The conduct from which bad faith is inferred in the instant case, according to the majority, is "Cravath's filing of objections to the legal conclusions of a special master who was appointed at the district court's suggestion, pursuant to a stipulation of the parties." Majority opinion at 206. To the contrary, I believe that Cravath's efforts to preserve objections to the Master's report on the basis of a plausible legal theory is fundamentally different from the type of intentional, dilatorious, or reckless disregard of an attorney's duties that Congress

intended section 1927 to deter and from which the courts have generally inferred bad faith.[4]

The district court alluded to the "frivolousness" of Cravath's contentions and it is accepted that the meritlessness of a claim may be evidence of bad faith, but the claim must lack "even a colorable basis in the law to justify an award of fees." *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir.1984). Courts have uniformly agreed that a "good faith" contention "supported by an *arguable legal theory* will not be viewed as 'vexatious.'" *Overnite Transportation Co.*, 697 F.2d at 795 (emphasis added).

Counsel for Cravath asserted below and at oral argument that after entering into the agreement that the Master's findings of fact and conclusions of law would be final and binding on the parties, counsel discovered legal authority for the proposition that it is virtually impossible to waive

---

The Ninth Circuit requires an express finding of willfulness, intent, recklessness or bad faith. *United States v. Austin*, 749 F.2d 1407, 1408 (9th Cir.1984); *Malhiot v. Southern California Retail Clerks*, 735 F.2d 1133, 1138 (9th Cir.1984); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983); *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir.1982).

The most recent Tenth Circuit decision involving section 1927 is that in *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1355 (10th Cir.1985) where the court upheld a district court assessment against counsel based on an express finding that he had "conducted himself in bad faith by commencing this action without sufficient legal basis...." The Eleventh Circuit also requires a finding that counsel acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1507 (11th Cir.1985) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)).

The majority opinion does not clearly articulate whether this court has adopted an objective or subjective standard of bad faith.

**4.** The imposition of sanctions under section 1927 is punitive and therefore must be construed strictly. *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir.1983). Congress deemed that the purpose of section 1927 is to penalize attorneys who engage in dilatory conduct. House Conference Report No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad.News 2716, 2781, 2782. The

Conference Committee explanation of the 1980 amendment to section 1927 emphasizes "[t]he high standard which must be met to trigger" the section to insure "that the provision in no way will dampen the legitimate zeal of an attorney in representing his client." *Id.* at 2782.

One of the cases relied on by the district court in assessing fees against Cravath states the dangers inherent in invoking section 1927:

The sanctions authorized under section 1927 are not to be lightly imposed; nor are they to be triggered because a lawyer vigorously and zealously pressed his client's interests. The power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client.

*Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1013–14 (S.D.N.Y.1982).

The Sixth Circuit has similarly held that the sanction is not to be imposed lightly:

Since the statute employs the unusual approach of requiring an attorney personally to pay costs instead of the customary one of placing the responsibility for them upon a litigant, it seems appropriate not to impose this sanction for an unintended inconvenience to the court no matter how annoying it might be. Personal responsibility should, in this instance, flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court.

*Ross*, 535 F.2d at 349.

the right to challenge the *legal* questions on a review of the Master's findings. Appendix ("App.") at 162–63; Transcript of Oral Argument at 4–5. The precise legal theory underpinning Cravath's objections: The Order of Reference created a Rule 53 Mastership, and a litigant's right under Rule 53(e)(4) to judicial review of a Master's legal conclusions cannot be waived by stipulation of the parties.

While I express no view as to the probability that seasoned, knowledgeable counsel such as Cravath would be so lacking in resources as not to keep abreast of recent legal developments, I do believe that the approach taken by the majority imparts the view that *any* "good-faith" pursuit of claims supported by arguable legal theories could be viewed as "unreasonable" and "vexatious" under section 1927.

My disagreement lies with the majority's reasoning that Cravath's objections to the Master's findings were not premised on a plausible legal theory. Cravath's assertion that the district court's reference was a Fed.R.Civ.P. 53 Mastership is certainly not unreasonable or vexatious given a record replete with express statements to that effect by the trial judge and the parties. Secondly, to the extent that the objections were directed at the Master's legal conclusions, Cravath's reliance on persuasive authority construing Rule 53(e)(4), in support of its contention that they are reviewable, irrespective of a stipulation to the contrary, is also not unreasonable and vexatious. Finally, having concluded that Cravath has posited an arguable legal theory, I also conclude that there are no objective factors in the record suggesting that it was not advanced in good faith.

An examination of the record and the pertinent case law demonstrates (a) the reasonableness of Cravath's position, *i.e.*, the colorability of Cravath's legal theories and (b) the lack of the requisite *mens rea* necessarily suggested when equating "vexatious" with "bad faith." Each of these facts precludes an assessment against Cravath of attorneys fees.

### A.

First, there is clearly a colorable basis in the record to support the premise that the proceeding, per the consent and understanding of the parties, was referred to a Special Master under the terms of Rule 53.

In *Turner v. Orr*, 722 F.2d 661, 664 (11th Cir.1984), the Eleventh Circuit held that a district court's finding that a "special master" appointed pursuant to a consent judgment between the parties to a Title VII discrimination case was in essence an arbitrator whose decisions were intended to be final and to bind the parties was clearly erroneous. Examining the record, the court held that the "special master" was such under the terms of Fed.R.Civ.P. 53, which provides for review by the district judge of a special master's decisions.

The district court in *Turner* had relied primarily upon the testimony of an attorney for the plaintiffs who was present when the consent judgment was negotiated. He testified that although the parties had discussed Rule 53, they had decided not to designate their master one appointed under Rule 53. I think Judge Tuttle's analysis is instructive in this case. Speaking for the Court, he stated:

> [T]he district court erred in going outside the four corners of the consent judgment to find that what the [agreement] labelled a "special master" was instead an "arbitrator." The consent judgment uses the term "special master" repeatedly, and never uses the term "arbitrator." The term "special master" is fairly technical, and appears specifically in Rule 53. Therefore, it is logical to assume that, absent an explicit indication to the contrary, when the parties provided for a "special master" they intended a Rule 53 special master.

*Turner*, 722 F.2d at 664.

Similarly, in this case, it is logical to assume that the parties, at least prior to the stipulation regarding review, intended a Rule 53 Master. The majority acknowledges that "the district court repeatedly referred to the referee as a 'Master' during

the conference, which led to the parties' stipulation." Majority Opinion at 207.[5]

In seeking to reach some consensus on the issues to refer to the "Master", the district court questioned Mr. Beerbower, counsel for Cerberus, as follows:

THE COURT: Mr. Beerbower, Mr. Rosenbaum has agreed that *whatever is before the Arbitrators now will be before the Master.* Didn't you?

App. at 23. (emphasis added).

Again, in reference to the powers of the Master, the district court discussed Rule 53 on eight different occasions. For example the court made the following comments:

THE COURT: Now, we got to get (sic) a *timetable for submissions to the Master.* I'm not going to let the Master decide this. If this is going to have any benefit to you people, we will make as conditions to the Mastership a certain timetable. And the Master is going to have to agree to perform under the timetable or he's not going to be a Master.

So the timetable for submission—then, based on what I heard at sidebar, the Master may have to take testimony, I gather. There will be a dispute of fact, I gather.

App. at 25–26.

Now, let's talk about witnesses. *The Master—I have not looked at the rules. I guess he can even issue expense, because he's a Master.*

MR. ROSENBAUM: *I looked at the rule, Judge. It's 53.*

THE COURT: I think he got (sic) subpoena power.

MR. ROSENBAUM: Yes.

App. at 27 (emphasis added).

And, again during the stipulation hearing, the district court entered into this extensive dialogue with counsel for Cerberus:

5. In reviewing the transcripts in the proceedings, I found the words Master, Mastership or Special Master used sixty-eight times. For instance, during the hearing of October 14, 1982, the transcript of which constitutes the Order of Reference, the district court stated:

Now, that means while—while you were in the corner, *your friends were talking about Rule 53. It might be well for us to get Rule 53.* Do you have such a book with you, Mr. Beerbower?

MR. BEERBOWER: Yes, I do.

THE COURT: *Where we are discussing reference under 53, Rule 53, in particular, timetables under 53(c)—and we are talking about the power of the Master under rule 53(c) to issue subpoenas—he's got the power to issue subpoenas under rule 53(d)(2), and, equally importantly, he got the power to impose sanctions under Rule 37 of the Federal Rules of Civil Procedure pursuant to Rule 53(b)(2).* So the Master has the complete power to move the proceedings along in accordance with the timetable which we are setting.

Now, a couple of other things occur to me. Housekeeping. *Technically the subject matter of the lawsuit which is now before me is not the same as the subject matter of the reference,* which is not a big to-do if—depending on how final you are in agreement that the masters report shall be.

Do both sides agree to be conclusively bound by what the Master finds or does anybody wish the right of appeal, *which is a very limited right under Rule 53, as you know.* If you have Rule 53 before you, you can see that there is a clearly erroneous standard for review to the District Court. *Rule 53(e)(2) says, "In Non-Jury Actions. In an action tried without a jury the court shall accept the Master's findings of fact unless clearly erroneous."*

However, in *Rule 53(e)(4)* it also says, "The effect of a Master's report is the same whether or not the parties have consented to the reference; but, *when the parties stipulate that a Master's*

THE COURT: We are talking about the scope of the authority. After all, we are setting up a machinery which does not have an independent—I suppose it does as long as the lawsuit pends. *The Master is something provided for under the rules. He is a quasi-judicial officer.* App. at 21. (emphasis added).

*findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.*"

App. at 31–33. (emphasis added).

It was in this context that the parties then stipulated that the Master's findings of fact *and* conclusions of law were to be final. As to the conclusions of law, the following colloquy took place:

> THE COURT: Will you agree on finality on issues of law, as well?
>
> MR. ROSENBAUM: Excuse me, Judge. (There is a pause in the proceedings.)
>
> THE COURT: Remember, if it helps you, you have not yet a complete agreement until we agree on the method of the selection of the Master, so forth and so on. Don't feel as though you are giving your whole life away each time.
>
> MR. BEERBOWER: I agree.
>
> THE COURT: The rule does not prohibit.
>
> MR. ROSENBAUM: It doesn't say anything.
>
> THE COURT: If you can waive your right to counsel, your right to the Fifth Amendment, your right to the Fourth Amendment, if you can waive all of your Constitutional rights, I am sure you can waive your statutory rights, as well.

App. at 33–34.

The majority reasons that, despite the foregoing statements by the district court, the Mastership created was not a "true" Rule 53 Mastership because the district court lacked subject matter jurisdiction over that portion of the dispute covered by the contract's arbitration clause. Majority Opinion at 207. But, the district court was cognizant of the potential subject matter jurisdiction problem, and in anticipation thereof stated:

> THE COURT: I'll tell you what concerns me. What concerns me is that *a Mastership under Rule 53 presumes subject matter jurisdiction in the Court from which the reference is made.* Where is my subject matter jurisdiction over the contract?

> . . . .

> ... *I see a way out.* All I did decide, after all, is that I would not act because of the agreement to arbitrate, since both sides are, in effect, now saying no more arbitration. I am, in effect, deciding the contract you will dispute. I no longer have to stay my hand because of the contract to arbitrate and now am referring it to a master. Agree?

> . . . .

> THE COURT: *So with that analysis, I have subject matter jurisdiction.*

App. at 37–38. (emphasis added).

Finally, during the appointment hearing on November 3, 1982, obviously referring to Rule 53(c) and (d), the district court remarked:

> THE COURT: Those minutes are his charter. Right? They are the order— they are the Letter of Reference. *You know, under the rules I'm supposed to write a Letter of Reference.*

App. at 67. (emphasis added).

The foregoing excerpts from the record indicate that at the outset of the proceedings and during the appointment of the master, the district court and the parties probably considered the reference as one bound by the constraints of Rule 53. Furthermore, even after these preliminary proceedings, on Baker's motion for entry of judgment on the Master's report, the following exchange occurred:

> THE COURT: Your motion is to confirm an arbitration award?
>
> MR. ROSENBAUM: To do two things.
>
> THE COURT: *I don't know what you are talking about. There was no arbitration. There was no award.*
>
> MR. ROSENBAUM: My motion was in the alternative. It is to either confirm what was kind of a bastardized proceeding in the form of an arbitration Mastership, *so I moved under the arbitration statute, I also moved under Rule 53,*

*which is to confirm Mr. Moser's ruling under the master rule.* Either way.

THE COURT: All right. I shall put away the lovely way in which you characterized the proceeding in which you voluntarily entered and through which you won an almost total and sweeping victory.

App. at 166–67. (emphasis added).

Despite this rejection of counsel's suggestion that judgment could be entered under the federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), as opposed to under Rule 53, the trial judge stated for the first time that the only provision which governs the judicial review of the Master's report was the federal Arbitration Act and that its provisions "do not permit review of the claimed errors of law." *Baker Industries, Inc.*, 570 F.Supp. at 1251. For the first time, the district court seems to adopt the notion of a "hybrid" type of dispute resolution mechanism, which the majority endorses, thereby contradicting its previous assertion of subject matter jurisdiction:

> Mr. Moser's findings and conclusions have not been rendered in the name of this court, which has no power to make such findings and conclusions; instead this court's jurisdiction is invoked only to enforce his determination. While this case is unusual in form, it is legally indistinguishable from those in which enforcement of the outcome of a binding dispute resolution process is sought.

*Id.* at 1252.

Notwithstanding these statements in the opinion, the trial judge had made it clear several times during the course of the proceedings that the parties were *not* engaged in an arbitration. For example, during the appointment hearing on November 9, 1984, the court stated: "By the way, I looked at your letter enough to see that you are misnaming him. He's not an arbitrator. The proceeding that you are about to go

through is not an arbitration." App. at 97.[6] Again, to reiterate, during the hearing on Baker's motion for entry of judgment, the court emphatically noted: "I don't know what you are talking about. There was no arbitration. There was no award." App. at 167.

For the foregoing reasons I submit that the record amply supports a reasonable argument that the proceeding before the Master was to be governed by Rule 53 and not as an arbitration or even an "arbitration—Mastership" pursuant to the federal Arbitration Act. Cravath's assertion that the Mastership was conducted pursuant to Rule 53 is firmly grounded in the record of the proceedings below. The transcript shows that the parties agreed to appoint a Master whose powers and duties were defined by several express references to Rule 53. Therefore, I believe that it was error for the trial judge, in his opinion's later characterization of the proceeding, to go outside of the record of the agreement.

**B.**

Second, if one accepts the colorability of Cravath's claim that the reference was within the scope of Rule 53 as a matter of record, one must similarly accept the reasonableness of their reliance on Rule 53(e)(4) to support the submission of their objections as a matter of law.

Although Rule 53 grants the parties certain rights of appeal from a special master's decision, the parties are free to agree to waive *some* of those rights. *Turner*, 722 F.2d at 664 n. 4 (emphasis added). Thus, unlike the majority, I am of the view that we do indeed at least need to examine the approaches taken by other circuits in grappling with the issue of whether, in a Rule 53 reference the parties may shield conclusions of law from review, in order to properly evaluate the plausibility of Cra-

---

**6.** The dialogue continues:

> MR. ROSENBAUM: I realize that. If I addressed him as an Arbitrator, I apologize.

> THE COURT: You keep referring to it as an arbitration proceeding. It is not.

App. at 98.

vath's claim. The focal point is thus the legal effect of the parties' stipulation to waive certain rights of appeal.

There is no dispute that the parties in this case agreed that the only portions of the Master's findings which were reviewable, were those which were outside of the scope of the mandate. App. at 48. The parties stipulated that the factual and legal findings of the Master were not reviewable by "the district court, the United States Court of Appeals for the Third Circuit, the Supreme Court of the United States, nor the World Court." App. at 35.

By its terms Rule 53(e)(4) is not dispositive because it expressly addresses only the unreviewability of a Rule 53 Master's findings of fact. Cravath maintains, however, that there is persuasive authority from other circuits, which have addressed what is an issue of first impression for this court—whether parties can waive review of a Rule 53 Master's conclusions of law—, which supports their position that conclusions of law are always reviewable. Having reviewed these cases, I think that there is authority for Cravath's assertion that, although parties may consent to the finality of the findings of fact by Special Masters under Rule 53, and explicitly provide for a final determination of the facts, they cannot stipulate as to the finality of the Master's conclusions of law despite the statute's silence. *See, e.g.,* 5A *Moore's Federal Practice* ¶ 53.15 at 53–150 (2d ed. 1985).

The majority overstates the case and misconstrues our function on this appeal when it looks to only two of the cases relied upon by Cravath and concludes that they are, respectively, "distinguishable" and "not dispositive." We do not have to be completely *persuaded* by Cravath's claim, nor do I believe that we have to go so far as to adopt any hard and fast rule in this regard, when we are simply assessing the plausibility of Cravath's objections in the context of an allegation of bad faith. Cravath stresses that when faced with the choice of either adhering to the stipulation which was entered into allegedly without an awareness of this body of case law, or with zealously advocating their client's position and performing their duty as officers of the court, they opted for the latter, directing the court's attention to these authorities via their objections.

Cravath relied primarily upon the Tenth Circuit decision in *Polin v. Dun & Bradstreet,* 634 F.2d 1319, 1321 (10th Cir.1980), in which the Tenth Circuit held that where the district court referred a matter to a master pursuant to a stipulation of the parties and entered judgment pursuant to the Special Master's order, the district court's failure to review and consider the Master's conclusions of law violated Rule 53(e)(4).[7] Cravath also relied on the Eighth Circuit's holding in *Duryea v. Third Northwestern National Bank,* 602 F.2d 809, 810 (8th Cir.1979), that Rule 53(e)(4) applies where reference has been made with the consent of the parties and a district court is obligated to review all issues of law arising from the master's conclusions of law.[8]

In the case at bar, the district court and the majority attempt to distinguish each of

<hr>

7. The *Polin* case was remanded for review of the Master's report. *See also DeCosta v. Columbia Broadcasting System, Inc.,* 520 F.2d 499, 508–9 (1st Cir.1975) *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976); *Cademartori v. Marine Midland Trust Co. of N.Y.,* 18 F.R.D. 277, 278–279 (S.D.N.Y.1955). The First Circuit has also determined that Rule 53 required the district court's review of the master's conclusions of law notwithstanding the parties' consent to the contrary. *DeCosta,* 520 F.2d at 508–9.

8. In the first instance, the *Duryea* court based its reasoning on the old magistrates statute, 28 U.S.C. ·§ 636 which has since been revised to give magistrates sitting as masters pursuant to Rule 53, an independent source of jurisdiction and power. *See Wharton·Thomas v. U.S.,* 721 F.2d 922 (3d Cir.1983).· The court also indicated that the master's finding was invalid because the district court did not indicate that it had considered or adopted the magistrate's conclusions of law. *Duryea,* 602 F.2d at 810. The case was remanded to the district court for review of the conclusions of law. *Id.*

the aforementioned cases on the ground that the parties did not consent to the Master acting as the *final arbiter,* but consented only to bypassing the district court while retaining review by the court of appeals. The trial judge stated:

> All of the cases relied on by Cerberus for its contention that we must review the master's conclusions of law are cases involving the delegation to a master or magistrate of some or all of a federal district court's judicial power to enter an appealable judgment resolving the case on the merits ... These cases have no applicability where the master acts as the final arbiter of a controversy rather than as an official rendering a judgment on behalf of a Federal district judge.

*Baker Industries, Inc.,* 570 F.Supp. at 1252–53 (footnote omitted).

This distinction misses the mark in two respects. First, it is arguable that there is no significant difference between arbitration and consensual reference when the parties have freely and knowingly agreed to waive access to an Article III judge in the first instance. Second, our concern should be whether, having evaluated the decisions on this issue, it was reasonable— not one hundred percent accurate—for Cravath to argue that the foregoing cases have carved out a Rule 53 exception which holds that parties cannot consent to the waiver of the review of a special master's conclusions of law. In *Iten Leasing Co. v. Burroughs Corp.,* 684 F.2d 573, 574–75 (8th Cir.1982), the Eighth Circuit examined its *Duryea* decision and stated:

> In *Duryea,* this court held that Rule 53(e)(4) of the Federal Rules of Civil Procedure allowed the parties to stipulate to the finality of the magistrate's findings of fact but that questions of law should be reviewed by the district court.

In my view, what would be indicative of bad faith in a case such as this one, would be an *intentional* mischaracterization of issues of fact as issues of law, solely to avoid the clear terms of the stipulation. But there is nothing in the record before this court to indicate that such is the case here. Therefore, to the extent that any of Cravath's objections arguably went to the Master's conclusions of law, I take the view that the district court may well have been obligated to review those conclusions of law. Because Cravath's actions in seeking review of those conclusions cannot be deemed "unreasonable" under section 1927, I would remand the Master's conclusions of law to the district court for consideration.

### C.

Finally, even were I to accept the majority's characterization of the reference as a unique "hybrid," and to further accept the proposition that the Master's findings were unreviewable under the Federal Arbitration Act, I would nonetheless find an abuse of discretion [9] because Cravath's conduct in filing objections to the Master's report did not "unreasonably and vexatiously" multiply the proceedings within the meaning of section 1927.

Although the statute's language does not limit its application to attorneys who act intentionally or in bad faith, by requiring a finding of bad faith, we have in effect determined that "unreasonable *and* vexatious" conduct connotes some minimum degree of culpability. As I interpret the trial court's findings, at most he found in the disjunctive—that aside from the purported frivolity of the claim, Cravath's conduct was implicitly "vexatious," or in other words, annoying and irritating to the court. To reiterate, evidence of bad faith can be gleaned from a meritless claim, but I fail to

---

**9.** As Judge Sloviter so thoughtfully noted in *United States v. Criden,* 648 F.2d 814, 818 (3d Cir.1981):

"[u]nreviewable discretion offends a deep sense of fitness in our view of the administration of justice." (citation omitted). There is a general feeling that the losing litigant should not be deprived of at least one opportunity for review of each significant ruling made by a single judge.

see how bad faith can be inferred from a claim supported by a plausible legal theory without some covert indication of intentional or reckless disregard in addition to the advancement of the claim itself. Whether Cravath was *correct* in arguing that the proceedings had occurred pursuant to Rule 53 is not the issue—the issue is whether its conduct in so doing amounted to *"willfully making frivolous assertions"* within the meaning of section 1927.

We have not often considered sanctions under section 1927. *See Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 560 (3d Cir. 1985) (in banc); *Poulis et al. v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1984); *Gross v. G.D. Searle & Co.*, 738 F.2d 600 (3d Cir.1984); *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749 n. 6 (3d Cir.1982). However, a review of the factual situations in section 1927 cases arising in other circuits, in light of our discussion of willfulness and bad faith in *Poulis*,[10] indicates that Cravath's conduct was different from the type of conduct that the courts have traditionally penalized under section 1927.

Courts have generally invoked the section either to punish knowingly baseless contentions that are made for an ulterior purpose, which is virtually always to harass or delay, *see, e.g., Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918 (2d Cir.1976); *Pfister v. Delta Air Lines, Inc.*, 496 F.Supp. 932, 936–37 (N.D. Ga.1980); *Regional Transportation Authority v. Grumman Flxible Corp.*, 532 F.Supp. 665 (N.D.Ill.1982), or to punish repeated instances of flagrantly improper conduct, often in disregard of the court's warnings. *See, e.g., Kiefel*, 404 F.2d at 1167; *Perichak v. International Union of Electrical Radio and Machine Workers*, 715 F.2d 78, 85 (3d Cir.1983); *Overnite Transportation Co.*, 697 F.2d at 795.

If the proceedings below were conducted in accordance with Rule 53, it was not unreasonable for Cravath to object to the findings of the master and seek a *de novo* review by the district court. Moreover, even if the proceedings were conducted as a unique hybrid, it was not unreasonable for Cravath to file objections, because the questions raised regarding the proceedings and the entry of judgment had never been previously presented to the court. Finally, although this court has not adopted specific guidelines for the imposition of sanctions under section 1927, in my estimation, in order to impose sanctions in a situation where an attorney is pursuing a plausible legal theory, the district court must explicitly find more objective factors indicative of opprobrious conduct than were found in the case at hand. *See Poulis*, 747 F.2d at 868.

## II.

Perhaps after all is said and done, this case reflects what Justice Holmes spoke of when he wrote more than a century ago:

> The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed.[11]

The majority opinion and the dissent in this case reflect very different perspectives, or as Justice Holmes would call it "intuitions of public policy," as to what should be the role of the district court judge in dealing with litigants who are tenacious, resourceful and strongwilled. From the trial judge's view, perhaps it is less troublesome to preside when your deci-

---

**10.** In *Poulis*, we looked to the manner in which the trial court balanced factors of prejudice to the adversary, history of counsel's dilatoriness, willful or bad faith, conduct by the attorney and

meritoriousness of the claim or defense. 747 F.2d at 868.

**11.** Oliver Wendell Holmes, *The Common Law* (Boston: Little, Brown, 1881), p. 1.

sion is challenged by a "gracious loser;" nevertheless, vehement lawyers should not be penalized simply because they have the temerity to advocate with vigor propositions that are in a legal twilight zone. Certainly in this case whether Mr. Moser was a "Master" or an "arbitrator" was an issue intertwined with definitional difficulties. Where, as in this record, the trial judge and the parties referred to the prospective adjudicator as a "Master" no less than *sixty-eight* times before Judge Stern ultimately concluded that he was an "arbitrator", Cravath should not be penalized because, after losing the case, they asked the court to apply the law applicable to a Master's erroneous conclusion of law. While Cravath was far from a gracious loser, I cannot conclude that their argument, though painstakingly technical, was devoid of merit. Despite the tensions of the job, trial judges must have the patience and the resolve to tolerate advocates who are not gracious losers and who argue propositions on the marginal edge of evolving doctrines. For history teaches us that in the evolution of the law, legal propositions that were almost heresy one day often at a later time become the law of the land.

I dissent because the district court abused its discretion in imposing sanctions pursuant to section 1927.