Peter T. CAMPANA, Plaintiff,

v.

The Honorable Malcolm
MUIR, Defendant.

Civ. A. No. 83–0310.

United States District Court,
M.D. Pennsylvania.

Aug. 2, 1985.

Robert C. Fogelnest, Philadelphia, Pa., and Ambrose R. Campana, Williamsport, Pa., for plaintiff.

Gordon A.D. Zubrod and Sally Lied, Asst. U.S. Attys., Harrisburg, Pa., for defendant.

## OPINION

LATCHUM, Senior District Judge.[1]

Plaintiff, Peter T. Campana ("P. Campana"), an attorney, filed a complaint on April 22, 1983, in this Court, seeking monetary damages against the defendant, the Honorable Malcolm Muir ("Judge Muir"), a United States District Court Judge for the Middle District of Pennsylvania. On July 11, 1983, this Court entered summary judgment in favor of Judge Muir based on the doctrine that a United States District Court Judge is immune from liability for damages on the claims asserted. *See* 585 F.Supp. 33 (M.D.Pa.1983). (Docket Item ["D.I."] 24.) Presently before this Court is defendant's motion for attorneys' fees in favor of the United States and against P. Campana and his counsel, Ambrose R. Campana ("A. Campana"), pursuant to 28 U.S.C. § 1927 (1980) and *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). (D.I. 36.) Because of defendant's motion, the Court held an evidentiary hearing on April 26, 1985, to receive evidence concerning attorneys' fees in order to de-

termine whether P. Campana and A. Campana acted in bad faith when they continued to prosecute the claims in light of the defense of judicial immunity. (D.I. 49.) The parties completed post-hearing briefing on July 19, 1985, and the matter is now ripe for disposition.

## I. APPLICABLE LEGAL PRINCIPLES

### A. *Roadway Express, Inc. and The Court's Inherent Power To Assess Attorneys' Fees*

The general rule of law, known as the "American rule," is that each litigant must pay his own attorneys' fees. *Alyeska Pipe Line Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The rationale for this rule is that "one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)). However, over the years courts have carved out a number of narrowly defined exceptions.[2] *See Alyeska Pipe Line Service,* 421 U.S. at 247–57, 95 S.Ct. at 1616–21. In *Alyeska,* the Supreme Court acknowledged the "inherent power" of courts to

> assess attorneys' fees for the "willful disobedience of a court order ... as part of the fine to be levied on the defendant[,] *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 426–28 [43 S.Ct. 458, 465–66, 67 L.Ed. 719] (1923)," *Fleischmann Distilling Corp. v. Maier Brewing Co., supra,* [386 U.S.] at 718 [87 S.Ct. at 1407]; or when the losing party

who has litigated in bad faith, it certainly may assess those expenses against *counsel* who willfully abuse judicial process." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (emphasis added).

---

1. Senior Judge of the United States Court for the District of Delaware sitting by designation pursuant to 28 U.S.C. § 292(b).

2. The power of the court to assess attorneys' fees covers both litigants *and* their counsel. "If a court may tax counsel fees against a *party*

has "acted in bad faith, vexatiously, wantonly or for oppressive reasons...." *F.D. Rich Co..[v. United States ex rel. Industrial Lumber Co.]*, 417 U.S. [116], at 129 [94 S.Ct. 2157, at 2165, 40 L.Ed.2d 703] [ (1974) ] (citing *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)).

421 U.S. at 258–59, 95 S.Ct. at 1622.

■ The bad-faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. " '[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). Moreover, the Supreme Court recently acknowledged the principle that it is within the inherent power of a federal court to assess attorneys' fees against an attorney who has acted unreasonably, vexatiously or in bad faith in connection with a piece of litigation so as to constitute an abuse of the judicial process. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

### B. *Section 1927*

28 U.S.C. § 1927, which provides for the assessment of sanctions directly against counsel, reads:

> Any attorney or other person admitted to conduct cases in any court of the United States of any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although the statute enables courts to impose sanctions for attorney misconduct, courts should exercise this power "only in instances of a serious and studied disregard for the orderly process of justice." *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983) (quoting *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969).

■ Pursuant to section 1927, three substantial requirements must be met before liability may be imposed: (1) a multiplication of proceedings by an attorney; (2) by conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings. *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 214 (3d Cir.1985) (dissent, Higginbotham, J.). Because the lynchpin of section 1927 liability is "improper conduct," for purposes of analysis, the requirement of unreasonable and vexatious conduct will be considered first.

#### 1. *The Unreasonable and Vexatious Requirement*

In order to assess fees against an attorney where the effect of the attorney's conduct is such that it "unreasonably and vexatiously increases the costs," the Court of Appeals for the Third Circuit follows the majority rule which holds that before attorneys' fees and costs may be taxed under section 1927, the district court must make a finding of "willful bad faith on the part of the offending attorney." *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 209, 215 fn. 3 (3d Cir.1985).[3]

---

**3.** Courts in other jurisdictions have also addressed the issue of "bad faith" under section 1927. In *Morris v. Adams-Millis Corp.*, 758 F.2d 1352 (10th Cir.1985), the Court affirmed a district court's finding of bad faith and the award of attorney's fees and costs under section 1927 against counsel for plaintiff who failed to present any opposition to defendant's motion for summary judgment or motion to tax attorney's fees when counsel had been directed to so respond. In *Tedeschi v. Barney*, 757 F.2d 465 (2d Cir.1985), the Court affirmed the district court's finding of bad faith and the award of

attorney's fees under section 1927 against plaintiff and his attorney because the plaintiff brought an action against his brokerage firm and its attorney for malicious prosecution, abuse of process, defamation, fraud on the court and emotional distress and there was no factual basis to support the allegations. *See also United States v. Blodgett*, 709 F.2d 608 (9th Cir.1983); *United States v. Ross*, 535 F.2d 346 (6th Cir.1976); and *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (7th Cir.1968), *cert. de-*

In *Baker* the plaintiff and defendant entered into a stipulation pursuant to a full and complete agreement whereby the district court would appoint a special master to make findings of fact and conclusions of law concerning the issues pending before the district court relating to a contract for the sale of smoke detectors. The stipulation barred review by any court of the referee's findings of fact and conclusions of law. Despite the bar of the stipulation, counsel for defendant filed objections to the legal conclusions of the special master. In disputing the non-reviewability of the master's findings and conclusions, defendant's counsel relied on precedents which were cited for the proposition that parties cannot effectively stipulate to shield from review the legal conclusions of a Fed.R. Civ.P. 53 master. The district court awarded attorneys' fees pursuant to 28 U.S.C. § 1927. The Court of Appeals for the Third Circuit affirmed, stating that the conduct of defendant's attorneys constituted "bad faith" when they blatantly violated the stipulation.

■ The Second Circuit also has stated that an action is brought in bad faith when there is clear evidence that the claim is entirely without color and has been asserted wantonly for purposes of harassment or delay or for other improper purposes. *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977). The bad faith criteria does not require that the legal and factual bases for the action prove totally frivolous. Where a litigant is motivated by vindictiveness, obduracy or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorneys' fees. *In re National Student Marketing Litigation*, 78 F.R.D. 726, 728 (D.D.C.1978), *aff'd*, 663 F.2d 178 (D.C. Cir.1980).

In *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), the Supreme Court held that a federal court has the inherent power to assess attorney's fees against an attorney who litigates in bad faith. The Court stated

that a finding of "bad faith" concerning either the filing or the prosecution of the litigation would have to precede any sanction against an attorney. 447 U.S. at 767, 100 S.Ct. at 2464. In *McCandless v. The Great Atlantic and Pacific Tea Co., Inc.*, 529 F.Supp. 476 (N.D.Ill.1982), *aff'd*, 697 F.2d 198 (7th Cir.1983), the court of appeals upheld the district court's finding that an attorney acted in bad faith when he filed a frivolous lawsuit, misquoted precedent, and failed to respond to defendant's motion for fees and costs. The court noted that: "The lawsuit could have been avoided had [plaintiff's] counsel done the minimum amount of research required by a responsible member of the bar. Basic research would have revealed that exhaustion of adequate internal union remedies ... is a prerequisite to suit...." *Id.* at 478.

A careful review of the evidentiary record (D.I. 49) is necessary to determine whether A. Campana and P. Campana acted in bad faith.

(1) On February 23, 1983, P. Campana commenced an action against Judge Muir by issuing a writ of summons against the defendant in the Court of Common Pleas of Lycoming County. (Civil Action No. 83–00363.) This lawsuit was based upon alleged libelous statements contained in Judge Muir's opinion dated February 18, 1983. Before any complaint was filed in the Court of Common Pleas, on March 8, 1983, the action was removed to this Court on defendant's request pursuant to 28 U.S.C. § 1443. (D.I. 1.)

(2) Shortly after the commencement of the state court action against Judge Muir (in late February or early March of 1983), Assistant United States Attorney Gordon A.D. Zubrod ("Zubrod") contacted plaintiff's attorney, A. Campana, and informed him that Zubrod would be representing Judge Muir and that Judge Muir intended to raise the defense of judicial immunity. (D.I. 49 at 25.)

(3) On March 7, 1983, Judge Muir was served with a notice of deposition in the

*nied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969).

case of Peter T. Campana v. Malcolm Muir, Civil Action No. 83–00363 (Court of Common Pleas of Lycoming County). In the notice of deposition the plaintiff stated:

The nature of the cause of action in this case is based upon alleged libelous statements contained in an Opinion written by the Defendant in his capacity as a Judge for the United States District Court for the Middle District of Pennsylvania. The Opinion was filed on February 18, 1983 in a case involving criminal contempt proceedings against the Plaintiff. It is the Plaintiff's contention that the various statements contained in that Opinion are false, were made by the Defendant with the knowledge that they were false, and have a tendency to defame the Plaintiff's character.

The matters to be inquired into at the deposition include the knowledge of the Defendant as to the various statements made concerning the Plaintiff's "manner of practicing law". Additionally, the Plaintiff wishes to inquire into the manner in which the Defendant's opinion came into the hands of agents of the Williamsport Sun Gazette, i.e. whether or not the Defendant took steps to see to it that his opinion received the attention of the press and whether the Williamsport Sun Gazette may also be liable to the Plaintiff.

(4) On March 11, 1983, P. Campana filed a praecipe for issuance of a writ of summons and obtained an *ex parte* order in the Court of Common Pleas for Lycoming County to conduct discovery of Judge Muir as a non-party witness in the case of Peter T. Campana v. Williamsport Sun Gazette and Joseph Musselman, Civil Action No. 83–00533. Pursuant to that order P. Campana served notice on Judge Muir to take his deposition on May 2, 1983 (the same date, time and place as stated in the March 7, 1983 notice of deposition). P. Campana requested, in his notice of deposition, that Judge Muir bring with him to the deposition "any handwritten notes, typewritten notes, handwritten memoranda, typewritten memoranda, or any writings relative to the opinion written by yourself...."

(5) On March 30 the United States filed a motion for a protective order staying discovery of Judge Muir. (D.I. 10.)

(6) On April 4, 1983, a hearing was held on the United States' motion to quash P. Campana's subpoena served on Judge Muir. In responding to the defendant's motion to quash the subpoena and to obtain a protective order from the Court of Common Pleas, A. Campana stated in his brief:

As to the argument that the subject matter of the lawsuit was doomed to failure at the onset because of the so called absolute immunity, Malcolm Muir errs. Firstly, Mr. Campana did not anticipate Judge Muir would or will *run to cover* in this matter. Plaintiff anticipated that Malcolm Muir would stand his ground, waive his judicial immunity, and defend the defamation suit on the merits. Secondly, if Malcolm Muir does assert the defense of judicial immunity, whether that defense will be upheld is a matter to be decided in the district court. [Emphasis added]

(7) On April 22, 1983, P. Campana filed a two-count complaint in this case (D.I. 15) alleging malicious prosecution and libel and seeking a judgment against Judge Muir for $10,000 on each count.

(8) On April 29, 1983, P. Campana withdrew his subpoena to Judge Muir after both parties were informed by the Chief Judge of the Court of Common Pleas Lycoming County that the Court was going to issue an order quashing the subpoena.

(9) The United States filed on May 11, 1983, a motion to dismiss or in the alternative for summary judgment. (D.I. 16.) In his brief in opposition to the motion, P. Campana stated:

The last part, IV of Defendant's argument, is to say the least, ludicrous. The Defendant desires this case to be dismissed on the grounds of judicial immunity. Yet, he admonishes all who read it that it is not an admission that his statements weren't true. The Defendant would have his cake and eat it too. He importunes the reader that his assertions

in his eleven page Opinion are true. Why, then, does he not desire to put them to a jury. (D.I. 20.)

(10) On July 11, 1983, this Court granted summary judgment in favor of Judge Muir and against P. Campana. (D.I. 24.) On July 13, 1983, the plaintiff filed a Motion to Alter or Amend the Court's Judgment, which motion was ultimately denied on August 3, 1983. (D.I. 25, 28.) P. Campana appealed the denial of the motion on August 19, 1983, to the United States Court of Appeals for the Third Circuit. (D.I. 29.)

(11) On September 29, 1983, Zubrod, as attorney for appellee, wrote a letter to A. Campana, counsel for appellant, designating additional parts of the record to be included in the Appendix pursuant to Fed. R.App.P. 30. (D.I. 49 at 28–30.) On October 4, 1983, A. Campana wrote a letter to Zubrod refusing to include the Appellee's designations in the Appendix. A. Campana stated that he did not find the designations made by Zubrod to be "necessary for the determination of the issues presented on appeal." On October 5, 1983, Zubrod wrote a letter to A. Campana where Zubrod set forth the pertinent parts of Rule 30(b) requiring the appellant to include all of the appellee's designations. Zubrod demanded that the appellee's designations be included in the Appendix and warned Mr. A. Campana that failure to comply with the appellee's designations would result in the appellee seeking "appropriate sanctions." (Id. at 31–33.)

Appellant, P. Campana, filed the Appendix in the Third Circuit on November 7, 1983, and failed to include any of the appellee's designations in that Appendix. (*Id.* at 33.) As a result, the United States was forced to file a petition for permission to file a Supplemental Appendix with the designations which were omitted by the appellant in the original Appendix. (*Id.* at 34.) Ultimately, the Court of Appeals ruled in favor of the appellee and denied appellant's motion to alter or amend the judgment. *See* 738 F.2d 420 (3d Cir.1984).

(12) On July 31, 1984, Zubrod filed a motion to hold P. Campana and A. Campana liable for costs of the proceedings pursuant to 28 U.S.C. § 1927 and the inherent powers of the Court as stated in *Roadway Express, Inc.* (D.I. 36.) On September 7, 1984, the United States filed a Bill of Costs in support of its motion for attorneys' fees and on April 26, 1985, this Court held an evidentiary hearing based on the United States' motion.

### a. *Colorable Claim*

■ It is accepted that the meritlessness of a claim may be evidence of bad faith, but the claim must lack "even a colorable basis in law to justify an award of fees." *Baker v. Cerberus, Ltd.*, 764 F.2d at 216 (quoting *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir.1984)). A colorable claim for purposes of the bad faith exception has some legal and factual support and a reasonable attorney could have concluded that the facts supporting the claim might be established. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980). The issue in the present case, therefore, becomes whether P. Campana maintained a "colorable claim" alleging libel and malicious prosecution against Judge Muir after the defense of judicial immunity was raised. The doctrine of judicial immunity, the origin of which can be traced to 1872 (*Bradley v. Fisher,* 13 Wall 335, 20 L.Ed. 646 (1872)), is clear and unequivocal. Judges are not liable in civil suits for their judicial acts even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly. 13 Wall at 351. The doctrine of judicial immunity is absolute in that it covers whatever a judge speaks, writes or does in the performance of their judicial functions, "irrespective of the motives with which those acts are alleged to have been performed," (*Barr v. Matteo,* 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434 (1959)) as long as the statements are "pertinent, relevant and material to any issue" in the proceeding. *Read v. Baker,* 430 F.Supp. 472, 476 (D.Del.1977) (applying Pennsylvania law).

■ As this Court has already determined, the doctrine of judicial immunity bars Judge Muir from liability in this case. Once the Campanas were put on notice that Judge Muir intended to raise the defense of judicial immunity with respect to statements made in opinions authored by him, they knew or should have known that P. Campana's claim had no factual or legal support. In certain cases, where the law is "so clear and well established" the moving party's position is deemed untenable. *Maneikis v. Jordan*, 678 F.2d 720 (7th Cir.), *cert. denied*, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). Such is the case here. In addition, because the defense of judicial immunity rendered P. Campana's claims entirely without color, a reasonable attorney, when put on notice of the defense of judicial immunity, would have advised his client to abandon his claim. A. Campana gave no such advice. (D.I. 49 at 117.)

### b. *Plaintiff's Motive*

But even assuming *arguendo* that P. Campana had a colorable claim, the Court must examine the record to determine whether P. Campana and his attorney were motivated by vindictiveness or obduracy in the way that they continued to pursue the claim after having been given notice that Judge Muir was raising the defense of judicial immunity. The record indicates that in late February or early March, 1983, A. Campana was informed by Zubrod in a telephone conversation that Judge Muir intended to raise the defense of judicial immunity. (D.I. 49 at 25, 110.) With full knowledge that Judge Muir intended to raise the defense, P. Campana filed a complaint in this case on April 22, 1983, alleging libel and malicious prosecution. The complaint, however, is totally devoid of any facts which would factually support a cause of action in which judicial immunity is raised as a defense, i.e. "clear absence of all jurisdiction" exception, *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Indeed, P. Campana has neither alleged nor proved any facts concerning the lack of jurisdiction.

■ In reviewing the entire record it is clear that both P. Campana and A. Campana were motivated by vindictiveness in the filing and prosecution of this case. First, the Campanas made two attempts to depose Judge Muir asking to review his handwritten or typewritten notes. Then they attempted to "taunt" Judge Muir into waiving his privilege of judicial immunity and "stand his ground." Thirdly, they refused to cooperate with opposing counsel with respect to filing appendices with the United States Court of Appeals for the Third Circuit. Finally, when this Court granted Judge Muir's motion for summary judgment, P. Campana appealed this Court's decision to deny P. Campana's Motion to Reconsider because A. Campana believed that the Court had included in its opinion a footnote which was "offending ... pure dictum, uncalled for [and] not necessary to the opinion." (D.I. 49 at 104.) [4]

However, with respect to the Campanas' motive, this Court need not guess as to what motivated P. Campana and A. Campana to file and prosecute this suit. Pursuant to the mandate of the Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, this Court gave notice and held a hearing on the record. At that hearing on April 26, 1985 (D.I. 49), the Campanas were given an opportunity under oath to explain their rea-

---

4. P. Campana filed a Motion to Reconsider (D.I. 25) whether or not footnote number 4 of the Summary Judgment Opinion, 585 F.Supp. *supra* at 35, should be excised. That footnote reads, *in toto:*

Because the Court is assuming that the allegations of the complaint are true, it should not be understood that this would be this Court's independent determination if it were necessary to make such a decision. Indeed, based on the underlying criminal contempt record, this Court would have to hold that the statements that plaintiff complained of were neither untrue nor maliciously motivated and that the criticism of plaintiff was entirely justified.

The court of appeals ultimately denied P. Campana's motion to alter or amend the district court opinion. *See* 738 F.2d 420 (1984).

sons for their conduct. The purpose of this hearing was to determine whether or not the Campanas filed and prosecuted the claims in bad faith.

At the hearing, A. Campana testified that as a result of the opinion published by Judge Muir concerning P. Campana that A. Campana was infuriated, incensed and angry with Judge Muir. A. Campana stated that he was "mad as hell" because "the statements were untrue" and "he [Judge Muir] locked the door to review of his opinion by dismissing the criminal contempt." (D.I. 49 at 92–93.) When both A. Campana and P. Campana were asked about the issue of judicial immunity, their response was that they felt that the defense would not be raised. (*Id.* at 95, 126.) When A. Campana was asked by the Court why he pursued the suit once he was advised in a motion for a protective order that Judge Muir was going to raise the defense of judicial immunity, the following colloquy took place:

BY MR. A. CAMPANA:

If what you are saying, Judge, is that you know better than to sue a judge, a federal judge because he automatically will raise the judicial immunity defense, you are saying more than I can accept, your Honor. I cannot accept that.

THE COURT: All right. You would file one again tomorrow.

MR. CAMPANA: Absolutely.

THE COURT: In the same situation.

MR. CAMPANA: Absolutely, your Honor.

BY MR. FOGELNEST:

Q In light of the fact that this one was dismissed because he raised judicial immunity, and you now know that Judge Muir would proceed in the same fashion, would you file one tomorrow?

A Absolutely.

(D.I. 49 at 101.) A. Campana further qualified that statement, however, by saying: "[I]f I knew he was going to raise judicial immunity before I filed this suit. No, I wouldn't do it [sue Judge Muir.]" (*Id.* at

103.) Finally, when A. Campana was asked whether he gave any thought to abandoning the litigation he stated that at no time during the course of this litigation did he think he should discontinue the suit. (*Id.* at 117.)

With respect to P. Campana,[5] the record indicates that he was motivated by the same attitude and for the same reasons as A. Campana. (D.I. 49 at 124.) P. Campana testified that the reason he filed the lawsuit was because "I felt humiliated ... [and] I had no recourse ... but to sue the man who made the statements." (*Id.* at 129.) When asked by the Court whether P. Campana would do the same thing today, P. Campana stated: "Given the circumstances as they existed then, yes." (*Id.*)

## 2. The Multiplication of Proceedings Requirement

The first prong of section 1927 requires the court to assess the impact of an attorney's improper conduct on the court processes. In *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (7th Cir.1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969), the defendant's attorney deliberately changed an answer in a deposition that he was reading to the jury, examined a witness on an exhibit that had not been offered into evidence and repeatedly made meritless objections. The district court, in response to these actions and a history of well-documented misconduct, levied costs on the attorney pursuant to 28 U.S.C. § 1927. *See also Bardin v. Mondon*, 298 F.2d 235 (2d Cir.1961) (plaintiff's counsel held liable under section 1927 when after counsel stated that he was ready to go to trial counsel requested a continuance on the morning of the trial on the grounds that the attorney designated to try the case was unable to proceed due to illness).

█ In the present case, this Court has been forced to continued to deal with this case because of the persistence and ada-

---

**5.** The record indicates that P. Campana is an attorney who has been practicing law in the Middle District of Pennsylvania since September 8, 1972. (D.I. 49 at 124.)

mant conduct of the Campanas after they were given notice that Judge Muir had raised the defense of judicial immunity thereby rendering P. Campana's allegations without a legal basis. In addition, the unyielding and inflexible position taken by A. Campana when he refused to include the appellee's designation of additional parts of the record in the Appendix to the brief filed before the Court of Appeals for the Third Circuit also extended the proceedings in this case. A. Campana's stubbornness forced the appellee (Judge Muir) to file a petition with the Court of Appeals for permission to file a Supplemental Appendix to include the appellee's designations that A. Campana refused to include.

### 3. Increased Costs Requirement

The third element that must be present in order to find liability under 28 U.S.C. § 1927 is an increase in the costs of the proceedings over those which should properly have been incurred. Based upon the record in this case the Court finds that once Judge Muir affirmatively defended his actions based upon the doctrine of judicial immunity, the Campanas knew or should have known that, without factual proof that would support a claim based upon the lack of jurisdiction exception, the action was both factually frivolous and without a

legal basis. As a result, all the costs[6] and legal fees incurred by the United States after actual notice of the defense of judicial immunity was given will be assessed against P. Campana, and his counsel, A. Campana.

### II. ASSESSMENT OF COUNSEL FEES AND COSTS

Because the Court has determined that legal fees and costs should be assessed, the Court must now determine the amount of the award. The assessment of fees against a non-prevailing party and counsel must be fair and reasonable based upon the particular circumstances of the case. *Tedeschi v. Smith Barney, Harris Upham & Co., Inc.*, 579 F.Supp. 657, 664 (S.D.N.Y.1984), *aff'd*, 757 F.2d 465 (2d Cir. 1985). The standard to be used to determine the proper award of fees is the "lodestar" method of fee calculation. *See Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 108 (3d Cir.1976). A lodestar fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the suit. (*Id.*)

The United States has filed a Bill of Costs[7] in support of its motion for attor-

---

**6.** In his brief in opposition to the award of attorney's fees pursuant to 28 U.S.C. § 1927, P. Campana argues that in *Roadway Express, Inc.*, 447 U.S. 756, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), the United States Supreme Court held that this statutory provision cannot be read to support the sanction of taxing attorney's fees against counsel because the term "costs" does not include attorney's fees. Therefore, P. Campana claims, 28 U.S.C. § 1927 does not establish a basis for the levying of attorney's fees upon the opposing party and his counsel. (D.I. 38 at 7.)

However, it is important to note that while it is true that on June 23, 1980, the Supreme Court in *Roadway Express, Inc.*, held that under section 1927 "costs" did not include attorneys' fees, on September 12, 1980, Congress amended § 1927. *See* The Antitrust Procedural Improvements Act of 1980, Pub.L.No. 96–349 § 3, 94 STAT 1154, 1156 (Sept. 12, 1980). Congress amended § 1927 to expressly provide that any attorney who so multiplies proceedings "unreasonably and vexatiously may be required by the

court *to satisfy personally* the *excess costs, expenses,* and *attorneys' fees* reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). The legislative history makes clear that the September 12, 1980 amendment was intended to "expand[ ] the category of expenses the judge might require an attorney to satisfy personally to include '... attorneys' fees.'" Joint Explanatory Statement of the Committee of Conference 96th Cong. 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2716, 2781, 2782.

**7.** The fact that the party seeking counsel fees is the United States does not bar an award. *Odbert v. United States*, 576 F.Supp. 825, 828 (E.D. Cal.1983). Pursuant to *Alyeska Pipe Line Services*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), a court may assess attorneys' fees when the losing party has acted in bad faith and "there is no reason why government officials should be harassed by bad faith litigation at no risk to the plaintiff." *Odbert v. United States*, 576 F.Supp. at 828, *citing Moon v. Smith*, 523 F.Supp. 1332 (E.D.Va.1981).

neys' fees. (Appendix A attached.) The United States argues that it should be compensated $7,510 based on a reasonable rate of compensation for an attorney with more than ten years of litigation experience ($100 per hour) and the total number of hours expended on this case (75.1 hours). The United States made no request for an adjustment of the lodestar fee of $7,510.

### A. Number Of Hours Reasonably Expended In This Litigation

 Neither P. Campana nor A. Campana seriously challenge any particular item on the United States' Bill of Costs. Instead, the Campanas have made a blanket assertion that "the allegations upon which the Defendant would have this Court find that both he [plaintiff] and his counsel acted in 'bad faith' would be insufficient factors upon which to base such a finding." (D.I. 38 at 10.) Although the Campanas have failed to set forth with any clarity reasons to adjust the award suggested by the United States in its Bill of Costs, this Court finds that some adjustment in the amount of the award is necessary. First, in an effort to give the Campanas the benefit of any doubt with respect to the issue of when they were given "notice" of the defense of judicial immunity, the 20 hours of time requested by the United States *prior* to the filing of its Motion to Dismiss (wherein the defense was *actually* raised) will be deleted. Secondly, the party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed. Where the documentation of hours is inadequate, the court may reduce the award accordingly. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In the present case, the United States has submitted a Bill of Costs based upon an estimate of the amount of time the Assistant United States Attorney spent on this case. This estimate is based upon a "general record" of the amount of time allocated to the case by the Assistant United States Attorney. (The record does indicate that the estimate of 75.1 hours is a conservative one, not taking into account any time spent on: written correspondence, research and writing of the brief with respect to the motion for attorneys' fees and the Bill of Costs, telephone conversations between Zubrod and the Department of Justice lawyers concerning judicial immunity or any printing or reproduction costs. (D.I. 49 at 14–23.)) Because the United States failed to contemporaneously document the number of hours spent by the Assistant United States Attorney, this Court finds that the number of hours claimed should be further reduced by 25% to insure that the number of hours expended on this suit is reasonable. Therefore, 41.3 hours should be allowed. (55.1 hours × 75% = 41.3 hours.)

### B. Reasonable Hourly Rate

 At the evidentiary hearing, the United States presented as an expert witness, Smith B. Gephart, Esquire, an attorney who has been practicing law in the Middle District of Pennsylvania, Dauphin County, for 18 years. Mr. Gephart testified that an attorney with the experience of Mr. Zubrod (a lawyer for 11 years, an Assistant United States Attorney for five years with substantial litigation experience in the defense and prosecution of criminal cases and the defense of civil cases) (D.I. 49 at 10–14) would have a billing rate between $100 and $120 per hour. (*Id.* at 7.) Because the Campanas have failed to produce any evidence to rebut this claim, the Court finds that $100 per hour is a reasonable hourly rate consistent with charges being made by law firms in the Middle District of Pennsylvania, Dauphin County.

Therefore, for purposes of this motion, the computation of attorneys' fees is determined as follows: 41.3 hours reasonably expended multiplied by a reasonable hourly rate of $100 equals $4,130 which will be the total fees awarded in this case.

### C. Apportionment Of Fees And Expenses Between P. Campana And His Counsel

Pursuant to 28 U.S.C. § 1927 and the Court's inherent power as stated in *Alyes-*

ka *Pipe Line Services* and *Roadway Express, Inc.*, the Court has authority to hold a party or his counsel or both personally liable for attorneys' fees. *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1289, 1292 (5th Cir.1983) (upholding award of attorneys' fees under § 1927 against plaintiff and his attorney jointly and severally), *cert. denied*, —— U.S. ——, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984), *modified*, 722 F.2d 209 (5th Cir.1984) (per curiam) (remanding for trial court to determine whether attorneys' fees for entire proceeding or just a portion of it should be awarded), *cert. denied*, —— U.S. ——, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984); *see also Tedeschi v. Barney*, 757 F.2d 465 (2d Cir.1985) and *Taylor v. Belger Cartage Service, Inc.*, 102 F.R.D. 172 (W.D.Mo.1984).

 P. Campana engaged his father, A. Campana, to represent him. P. Campana, also an attorney, should equally share in the responsibility for his counsel's actions. It is clear from the record that P. Campana as much as A. Campana acted in bad faith in pursuing this case once they had definitive notice by motion that Judge Muir would raise the defense of judicial immunity. There is evidence in the record that both Campanas were involved in the research and preparation in the filing of the case, although it is difficult to determine exactly what part P. Campana played in the prosecution of this case. Nevertheless, P. Campana did testify that "whatever Ambrose Campana did, I approve of it." (D.I. 49 at 113, 128.) Therefore, the Court finds that the total attorney fee of $4,130.00 should be assessed against P. Campana and his attorney, A. Campana, jointly and severally.

This opinion shall constitute the findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

A judgment will be entered in accordance with this opinion.

### APPENDIX A

### BILL OF COSTS

| | |
|---|---|
| Motion For Protective Order and Brief filed 3/30/83 | 2 hours |
| Petition For Removal filed 3/30/83 | 1 hour |
| Motion To Designate A U.S. District Judge From Outside The Middle District of Pennsylvania filed 3/30/83 | 2 hours |
| Motion To Quash Subpoena and Brief filed 4/11/83 and 4/18/83 | 6 hours |
| Travel to and from Williamsport, Pennsylvania for hearing on Motion To Quash Subpoena 4/24 to 4/25 | 4 hours |
| Hearing on Motion to Quash Subpoena (4/25/83) | 1 hour |
| Motion To Dismiss, Or, In The Alternative, For Summary Judgment and Brief filed 5/11/83 | 30 hours |
| Reply Brief filed 6/17/83 | 2.5 hours |
| Brief In Opposition To Plaintiff's Motion To Amend Judgment | 10 hours |
| Third Circuit Appellee's Brief | 8 hours |
| Motion For Leave To File Supplemental Appendix plus preparation of Supplemental Appendix | 2 hours |
| Telephone Conversations with Judge Muir (12) | 3.6 hours |
| Telephone Conversations with Attorney for Williamsport Sun Gazette and with Clerk of Court personnel regarding affidavits for Motion to Quash Subpoena | 3 hours |
| TOTAL HOURS | 75.1 |